Mauldin *v.* Ball.

MAULDIN *v.* BALL.

(*Jackson.* May 25, 1900.)

1. MALICIOUS PROSECUTION. *Effect of advice.*

It is not a complete defense to an action for malicious prosecution that defendant, before instituting the proceedings complained of, applied, in good faith, to a Justice of the Peace, and laid all the facts, as he understood them, before such Justice, and obtained his opinion that they were sufficient to authorize the issuance of a warrant for plaintiff's arrest, if it should, nevertheless, turn out that the facts were not correctly understood and reported, or that the opinion was not well founded in law. (*Post, pp. 598–604.*)

Cases cited: Kendrick *v.* Cypert, 10 Hum., 291; Morgan *v.* Duffy, 94 Tenn., 686.

2. SAME. *Aider and abettor liable.*

One who aids and abets another, or ratifies his acts, in a malicious prosecution is equally liable to the party injured with the principal actor for the damages sustained. (*Post, pp. 605, 606*).

FROM SHELBY.

Appeal in error from the Circuit Court of Shelby County. L. H. ESTES, J.

CARROLL & McKELLAR for Mauldin.

PERCY & WATKNS for Ball.

WILKES, J. This is an action for malicious prosecution. The charge is that White swore out a warrant before a Justice of the Peace for Mauldin's arrest, charging him with obtaining money under false pretense, and that Ball procured him to commence and continue the prosecution. Mauldin waived examination before the Justice of the Peace, and was bound over to the Criminal Court. No indictment was found by the grand jury, and he was discharged, and he thereupon brought the present suit. There was a trial before the Court and a jury, and a verdict and judgment for defendant, and plaintiff has appealed.

The facts, briefly stated, are that Jim Isom, a negro, owed Mauldin rents. They differed as to the amount. Ball was a commission merchant, and had a mortgage on Isom's crop for supplies furnished. Ball sent a check for $180 to pay the rent. Mauldin declined to receive it as full pay, but agreed to take the money on account. Ball then sent White, his clerk, with $180 in silver to pay Mauldin, and with it a receipt in full for Isom's rent for 1898, to be signed by Mauldin. The money and receipt were handed to Mauldin, and he was asked to sign the receipt, and at the same time he was handed a release to sign for all claims he had upon Isom's crop. Mauldin took the money and counted it, and, instead of signing the papers, turned the receipt

over and indorsed on it a receipt for $180 upon Isom's rent for 1897. White declined to receive this paper, and Mauldin declined to sign the others or to give up the money on White's demand. Mauldin kept the money and deposited it in bank, but soon after drew it out over White's protest, who continued to demand the return of the money or that the papers be signed.

Ball subsequently met Mauldin on the street, and asked him to sign the papers, which he refused to do, and, according to Ball's statement, with an oath backed into the street, with his hand on his pocket, when Ball said to him it was a good thing the police were not present, or he would put the law to him. Ball thereupon returned to his store, charged White, his clerk, with the $180, telling him he had not followed instructions and obtained proper papers, and he would have to lose the amount. Thereupon Ball took White down to the office of Davis, Justice of the Peace, and introduced him to Davis. White related all the facts to the Justice of the Peace, who advised him that Mauldin was guilty of obtaining money under false pretenses. A warrant was prepared by the Justice of the Peace, White made the affidavit, and Mauldin was arrested by special officer appointed under the usual emergency affidavit—that the business was urgent, and no regular officer was present. The case was set for hearing at 2 o'clock that evening. At

Mauldin *v.* Ball.

that time Mauldin appeared, and, at Ball's request, the case was about to be continued on account of Isom's absence, when Mauldin waived examination and was bound over to Court. He was under arrest some twenty minutes. White and Ball both appeared before the District Attorney, and White stated the case, and there was no further attempt to prosecute, the District Attorney being of opinion no offense was committed. After this, Mauldin sued Isom, and recovered judgment for $20, balance of rent owing him. Ball & Co., signed the bond in this case, and paid the judgment and costs afterwards for Isom.

It is assigned as error, among other things, that the Court incorrectly charged that if White went before a Justice of the Peace and fairly and fully laid all the facts before him, and honestly sought his advice for the purpose of bringing what he supposed to be a criminal to justice, then he had a right to bring the suit, and the law would protect him in bringing the suit.

We think this charge faulty in two respects. In the first place, it states, in substance, that if the party sought the advice of the Justice of the Peace honestly, then he had a right to bring the suit, and the law protects him, without regard to what advice the Justice gave him. The charge, if correct at all, should have gone further, and stated that if the party sought the advice and the Justice of the Peace gave it, then

it would protect; but he does not so state, but simply makes the matter turn upon the seeking of the advice, without regard to what advice, as a matter of fact, was given by the Justice of the Peace. Again, it justifies the bringing of the suit absolutely because of the advice, while the most that could be predicated of it was that it was evidence of good faith and want of malice.

It has been held in this State that the defendant cannot justify absolutely upon the opinion of an attorney if the facts were incorrectly stated or the opinion is unfounded. *Kendrick* v. *Cypert*, 10 Hum., 291. And again, he cannot defend upon such advice by an attorney, if the facts evidently and plainly do not warrant such advice. *Morgan* v. *Duffy*, 10 Pickle, 686.

It has never been held in this State that a party can justify bringing a suit upon the advice of a Justice of the Peace, nor that the advice of a Justice of the Peace stands on the same footing as that of an attorney. We are cited to quite a number of cases from other States that such is not the rule. Justices of the Peace are not charged with the duty of giving advice. It is not their office or function. They have no right to act as attorney. They may determine for themselves whether the facts stated will justify them in issuing a warrant or commencing proceedings, but this they do judicially

and for themselves, and not as advisers of parties seeking to commence actions. *Probst* v. *Ruff*, 45 Am. Rep., 358; 14 Am. & Eng. Enc. L., 57; *Olmstead* v. *Partridge*, 82 Mass., 381; *Gee* v. *Culver*, 12 Ore., 388; *Burgett* v. *Burgett*, 43 Ill., 78; *Coleman* v. *Henrich*, 2 Mackay (D. C.), 189; *Murphy* v. *Larson*, 77 Ill., 172; *Stanton* v. *Hart*, 27 Mich., 539; *Williams* v. *Vanleder*, 8 Mo., 339; *Sutton* v. *McConnell*, 45 Wis., 269; *Buhoffer* v. *Loueffert* 159 Pa., 374; *Holmes* v. *Horger*, 96 Mich., 408; *Mark* v. *Hastings*, 101 Ala., 165; *Moore* v. *Sanborin*, 42 Mo., 494.

In the case of *Probst* v. *Ruff*, supra, Judge Mercer delivering the opinion of the Court, said:

"When the prosecution fully and fairly submits to his counsel, learned in the law, all the facts which he knows are capable of proof, and is advised that they are sufficient to sustain a prosecution, and acting in good faith on that opinion, does institute the prosecution, he is not liable to an action for malicious prosecution, although the opinion be erroneous. Shall the advice of a committing magistrate have the same effect? We think not. Justices of the Peace are not required to be learned in the law; in fact, generally, through the State, they are not. They are not qualified by a course of study to give advice on questions of law. They do not pursue it as a profession. They are not charged

with the duty of advising any person to commence a prosecution. They ought not to act as attorney or agent for one in regard to a prosecution he is about to institute before them. Their duties are judicial. They may, in the discharge thereof, reduce the substance of the complaint to writing, in the form of an information of the prosecutor; then they judicially determine whether the facts therein averred be sufficient to justify the issuing of a warrant. An educated business man may be much better qualified than many experienced Justices of the Peace to advise as to the law; yet I am not aware that the advice of such a person has ever been held to protect against damages for a malicious prosecution."

The conclusion at which we have arrived is not in conflict with any decision of this Court. It is the logical sequence of the rule declared in *Walter* v. *Sample* 1 Casey, 275. In that case the prosecutor had acted under the advice of a member of the bar. The protecting power of the rule extends no further than the advice of one learned in the law. In an action for malicious prosecution, the defendant cannot be permitted to prove that he acted under the advice of a magistrate.

In the case of *Olmstead* v. *Partridge,* supra, Chief Justice Bigelow, speaking for the Court, said:

"In actions for malicious prosecution it has

been held to be competent for the defendant to prove, in order to establish the fact of probable cause, that in prosecuting the plaintiff on a criminal charge he acted in accordance with the advice of counsel on a full and correct statement of all material facts bearing on the case. *Hewlett* v. *Churchley*, 5 Taunt., 277; *Ravenga* v. *Macintosh*, 2 B. & C., 693. But such testimony has always been limited to communications with counsel or attorneys. Statements made to other persons and advice given by them have never been deemed admissible. The law wisely requires that a party who has instituted a groundless suit against another should show that he acted on the advice of a person who, by his professional training and experience and as an officer of the Court, may be reasonably supposed to be competent to give safe and prudent counsel, on which a party may act honestly and in good faith, although to the injury of another. But it would open the door to great abuses of legal process if shelter and protection from the consequences of instituting an unfounded prosecution could be obtained by proof that a party acted on the irresponsible advice of one who could not be presumed to have better means of judging of the rights and duties of the prosecutor on a given state of facts than the prosecutor himself."

These cases lay down a more liberal rule ·in regard to attorneys than our own Court, and these are only cited as to the effect of opinions of Justices of the Peace.

It is said the Court erred in charging the jury, in substance, that if they found that Ball induced White to sue out the warrant, · and was the moving spirit in the prosecution, and used White to protect himself, then he could be held to the same extent as White could, but unless he was shown by the evidence to have been the moving cause of the prosecution, there could be no recovery against him.

On the same feature of the case the Court declined to charge, on request, that if Ball actively ratified what White did, and aided and abetted in the prosecution, Ball would be liable to the same extent as White for bringing such prosecution.

We think the Court erred in this feature, and that the charge as given was incorrect, and the charge asked should have been given, and is an accurate exposition of the true rule in such cases.

There are other assignments, some of which we think are well taken, but it is not necessary to pass upon them in detail, as they will probably not be repeated on a new trial.

For the reasons and upon the grounds indicated, we reverse the judgment of the Court be-

Mauldin *v.* Ball.

low and remand the cause for a new trial, and appellee will pay cost of appeal.

There is an assignment that there is no evidence to support the verdict, which, in this case, is equivalent to saying that justification in bringing the prosecution is not made out. We will not pass upon this feature of the case, in view of the other errors found.