[No. 2539.   Sept. 29, 1922.]

## MERAZ v. VALENCIA et al.

### SYLLABUS BY THE COURT

(1)   In an action for malicious prosecution, it is not essential to a recovery to show that the defendant made the complaint or instituted the action. The law only requires that defendant be shown to 'have been responsible for the institution or continuance of the proceeding complained of.
P. 178

(2)   The entry of a nolle pros. without the procurement or consent of the defendant in a criminal case is a sufficient termination of the proceeding to support an action for malicious prosecution.                                            P. 178

(3)   Probable cause in actions for malicious prosecution is a question of law for the court.                            P. 178

Appeal from District Court, Bernalillo County; Hickey, Judge.

Action by Santiago Meraz against Florentino Valencia and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with instructions.

Marron & Wood, of Albuquerque, for plaintiff in error.

Richard H. Hanna and W. C. Reid, both of Albuquerque, for defendants in error.

OPINION OF THE COURT

PARKER, J.  Plaintiff in error, Santiago Meraz, brought this action below for malicious prosecution against the National Life Insurance Company, E. T. Chase, and Florentino Valencia.  At the close of plaintiff's case, on motion, a verdict was instructed for defendants in error, and from the judgment entered thereon this writ of error is sued out.

Plaintiff, on November 3, 1917, at Pecos, in San Miguel county, gave his check, drawn on the First National Bank of Albuquerque, to Florentino Valencia, for $970, in payment for certain sheep purchased by plaintiff.  Valencia kept the check in his possession without presenting it for payment for almost a year, or until some time in October, 1918, when he transferred it to the National Life Insurance Company for value. When plaintiff executed the check his balance in the said bank was $1,626.40.  Up to November 16 his balance totaled more than $1,300.  Between November 16 and November 26 his balance was between $600 and $700.  On November 27 and 28 he was overdrawn, but the overdrafts were paid by the bank.  On November 28, 1917, his balance was $1,587, and from then until December 17, 1917, his balance totaled more than $1,000.  It will thus be seen that, excepting for about 10 days, between November 3, 1917, and December 17, 1917, there were ample funds in the bank to the credit of plaintiff to satisfy the check he gave to Valencia.

During all of this time, and up to May, 1918, the appellant had an arrangement with the bank by which it paid his overdrafts.  The testimony of plaintff to this effect is supported by the fact that on two different occasions in November, 1917, his overdrafts were paid

by the bank. When Chase or the National Life Insurance Company presented the check for payment in October, 1918, it was dishonored for lack of sufficient funds to pay it. On October 22, 1918, Chase wrote Valencia that it was the fault of Valencia that the check had not been paid, because ''it is your own fault for holding it such a long time without presenting it.'' On November 15, 1918, Chase, as secretary of the insurance company, wrote to plaintiff, saying

"It would seem to me that you are taking a grave risk in giving a man a check for lambs and taking the lambs when the check is not any good. I shall expect you to call at this office and fix this matter up immediately, or I shall take the matter up with the district attorney."

The plaintiff called at the office of the insurance company and made known the fact that he was theretofore unaware that his check had not been previously presented and paid, but, disliking the manner of the insurance people, he left without paying the check. On November 26, 1918, Chase advised plaintiff that it was necessary that some arrangement looking to payment of the check be made immediately, ''or you will have to do business with somebody besides us.''

In January, 1919, Chase suggested to Valencia that he take the matter up with the district attorney, and at the same time advised the district attorney to take the matter up with Valencia. The assistant district attorney, Luis E. Armijo, wrote Valencia to come to his office to make explanation of the matter, which Valencia did. Armijo then had Valencia swear out a warrant for the arrest of plaintiff, and it was executed by taking plaintiff in custody 10 miles beyond Belen. Plaintiff was taken then to Las Vegas, where he remained in jail until he procured bond. In February, 1919, Chase wrote to Valencia, saying that the Meraz matter had been placed in the hands of the district attorney, Luis E. Armijo. Later plaintiff was indicted for issuing the check in question, but during the course of impaneling the petit jury to try him Luis E. Armijo, the district attorney, dismissed the case. Prior to this

time the insurance company or Chase had employed Armijo to bring suit on the check against plaintiff. This he did, and after the criminal case had been dismissed the civil case was compromised by plaintiff giving three notes in lieu of the check. The criminal action was not .dismissed because of any arrangement of settlement or compromise between Luis E. Armijo, the insurance attorney and district attorney, and the plaintiff.

The grounds of the motion to instruct a verdict against the plaintiff were substantially that: (1) Defendants did not make the complaint upon which plaintiff was arrested; (2) that no evidence of malice was shown; (3) that plaintiff failed to show want of probable cause; (4) that the prosecution was initiated by the district attorney alone, after full disclosure of the facts; and (5) that the termination of the prosecution was the result of compromise and settlement brought about at the instance of plaintiff.

Either the actual facts proved, or inferences reasonably to be drawn from the facts proved, or both, indicate that Chase, the National Life Insurance Company, Valencia, and Luis E. Armijo, attorney for Chase and the insurance company, endeavored to compel the payment of the check drawn more than a year before by the institution of criminal proceedings, and that they were acting in concert to that end. The facts we have repeated justify that inference. The plaintiff was charged with violating section 1650, Code 1915, providing that any person who shall willfully and with intent to defraud draw or utter a check for money on any bank, knowing that same will not be paid upon presentation, shall be punished, etc. The plaintiff was required to establish, by a preponderance of the evidence: (a) That the criminal prosecution was commenced or induced or procured to be commenced by the defendants; (b) that it terminated in his favor; (c) that no probable cause existed for the prosecution; and (d)

that it was commenced maliciously. 19 Am. & Eng. Ency. of Law, 653.

[1] The complaint alleged that the defendants, acting together, procured the charge to be made, and there was no denial of that allegation. However, the same conclusion is inferable from the evidence. It is not necessary that the person charged with malicious prosecution should have personally made the complaint or instituted the action. It is enough that the prosecution was commenced at his instance, or that he was instrumental in commencing it. Russell v. Chamberlain, 12 Idaho, 299, 85 Pac. 926, 9 Ann. Cas. 1173; Mauldin v. Ball, 104 Tenn. 597, 58 S. W. 248; Kline v. Shuler, 30 N. C. 484, 49 Am. Dec. 402. All that the law requires is that it must be shown that the defendant was responsible for the institution or continuance of the proceeding complained of. 18 R. C. L. "Malicious Prosecution," § 7. No particular method of proof is necessary to connect the defendant with the prosecution. Id. § 8.

[2] The contention of defendants in error that the termination of the criminal proceedings was such that it would not support the action for malicious prosecution is without any merit. The weight of authority is that an acquittal upon the merits is not necessary to charge a defendant with malicious prosecution. The entry of a nolle pros. without the procurement or consent of defendant is such a termination as will support the action. 18 R. C. L. "Malicious Prosecution," § 12, and notes to Groves v. Scott, 104 Va. 372, 51 S. E. 821, 2 L. R. A. (N. S.) 927, 113 Am. St. Rep. 1043, 7 Ann. Cas. 480, and Wilkinson v. Wilkerson, 159 N. C. 265, 74 S. E. 740, 39 L. R. A. (N. S.) 1215.

[3] Malice in actions of this kind is understood to mean a wrong act done intentionally, without legal justification, and may be drawn from the lack of probable cause. Whether the facts adduced constitute probable cause or lack of it is usually a question of law

for the court. 18 R. C. L. "Malicious Prosecution," §
39. Grau v. Forge, 183 Ky. 521, 209 S. W. 369, 3 A.
L. R. 642. The motion to instruct admitted all facts
proved by plaintiff and all inferences reasonably de-
ducible therefrom, and the question now is whether
such facts and inferences were sufficient as a matter of
law to prove malice and lack of probable cause. We
have recited the facts in this opinion, and find they
are sufficient as a matter of law to permit a recovery,
when standing unrebutted by any evidence on the
part of the defendants. On a retrial of this case,
should the evidence be conflicting, the determination
of these questions would eventually be a matter within
the province of the jury.

What we have said concerning the concerted action
of the defendants and Armijo makes it unnecessary to
discuss the proposition, advanced by defendants, that
the criminal proceedings were initiated by the district
attorney alone after full disclosure of the facts.

For the reasons stated, the judgment will be reversed,
and the cause remanded, with instructions to grant
plaintiff a new trial; and it is so ordered.

RAYNOLDS, C. J., concurs.