Melvin George **MARTYNN**

v.

Joseph **DARCY** et al.

Civ. A. No. 71–1189.

United States District Court, E. D. Louisiana, New Orleans Division.

Nov. 2, 1971.

Michael A. Dessommes, New Orleans, La., for plaintiff.

R. M. Michalcyzk, Wallace A. Hunter, Baton Rouge, La., W. Eric Lundin, III, New Orleans, La., for defendants.

ALVIN B. RUBIN, District Judge:

Melvin Martynn sues under the Civil Rights Act, 28 U.S.C. § 1343(3), alleging that he was deprived of his Constitutional rights under the First and Fourteenth Amendments by the Sheriff and two deputy Sheriffs of Jefferson Parish, Joseph Darcy and Nicholas LeBlanc, when they arrested him, charged him with disturbing the peace and with interfering with a police officer. He also contends that, after he was arrested, Darcy "threatened (him) with bodily harm * * * putting him in fear for his physical safety and well-being." He alleges that these police officers conspired with a third defendant, Guy Chivleatto, to hinder, impede, obstruct or defeat the due course of justice in the State of Louisiana, with the intent of denying him equal protection of the law because of his association with a Negro, and to injure him for lawfully attempting to obtain his and others' rights with the Constitution and the laws of the United States.

As to the facts on which these claims are based, Martynn either in his complaint or the affidavit filed in response to a motion for summary judgment, that he went to a pool hall operated by Chivleatto, accompanied by a Negro friend, Burkhalter, and asked to be served 2 beers; the bartender refused to serve his friend; he quietly advised the bartender that he intended to file a lawsuit; he left and telephoned the Sheriff's office. Thereafter, Officer LeBlanc arrived, but refused to discuss the matter with Martynn. Then Officer LeBlanc advised plaintiff he was calling a superior officer. In response to LeBlanc's call, his superior officer, Joseph Darcy, arrived and, after refusing to consult with plaintiff, also went into the pool hall.

Thirty minutes later the two Deputy Sheriffs re-appeared. When plaintiff attempted to inquire about the rights of his companion and their right to be served, Darcy turned on plaintiff and arrested him. Martynn says he committed neither of the offenses charged, but conducted himself in a quiet and gentlemanly fashion.

Nonetheless, he continues, he was arrested, handcuffed, taken to jail, and booked. He was required to post bond, tried in a state court (the Second Parish Court for the Parish of Jefferson), and found guilty of both offenses. He appealed his conviction, and it was affirmed. But he avers there was insufficient evidence to support the conviction.

Martynn contends that these actions not only deprived him of his rights and privileges under the U.S. Constitution and laws, but also of his rights under the laws of Louisiana, and that these actions constituted the torts of false arrest and false imprisonment.

A motion to dismiss was filed by Darcy, LeBlanc and Chivleatto, and their insurers, but the court converted it to a motion for summary judgment in accordance with FRCP Rule 12(b), and required the parties to comply with Rule 56. The parties thereafter filed affidadavits. Darcy's affidavit recites generally that he received a complaint and proceeded to investigate it. He learned that Martynn "had previously caused problems in the premises and was asked at that time to leave and again on the particular date in question," but "that Martynn's three companions were welcome in the establishment and were entitled to service." He informed Martynn that he would not be able to re-enter the premises and Martynn then became "very loud and boisterous;" and "continued to holler and threaten affiant with a federal action for his refusal of entrance to the premises;" he "again requested Martynn to move on and upon his failure to do so, and Martynn's continued boisterous and belligerent manner, he was arrested for disturbing the peace and interfering with police." "[A]t no time were any of his acts by way of words, conduct or actions, based on any racial issues nor discrimination, but rather based on the facts and circumstances as presented, investigated, and as demonstrated by plaintiff in order to preserve the peace of the community."

Martynn's only reply was a memorandum from his counsel, to which was attached a Xerox copy of a proposed affidavit by Martynn and a Xerox copy of an affidavit that Martynn's counsel thought Burkhalter would sign. His counsel stated that the original of Martynn's affidavit had been mailed to Martynn to sign and Burkhalter would sign his affidavit after Martynn. Neither of these affidavits was in fact signed or filed in the record at the time of the hearing but the court treated them as if they had been signed and filed. After the hearing they were in fact signed and filed. The Martynn affidavit states he was denied service in the bar because his friend, Mr. Burkhalter, was a Negro.

It continues:

"[A]fter informing the bartender quietly of his intention your deponent and Mr. Burkhalter and their other friend left the establishment and telephoned the Jefferson Parish Sheriff's office to advise them of the incident; * * *. Thereafter, deputy Nicholas

LeBlanc arrived at the scene, and went inside the premises, concurrently with the owner of the premises, Guy Chivleatto, the defendant, who had arrived at the same time;

"Officer LeBlanc would not discuss the matter with the deponent but went into the premises with Mr. Chivleatto, and after about twenty minutes, Officer LeBlanc reappeared and informed the deponent and his friends that he was calling a superior officer, which he did;

"Thereafter, the superior officer, Joseph Darcy, arrived, and also went into the premises of Guy's Pool Hall, without discussing the matter with deponent prior thereto;

"After approximately twenty minutes, Officer Darcy reappeared from the premises and advised that Mr. Chivleatto would serve the colored man but would not serve Mr. Martynn;

"Deponent attempted to find out what his rights and the rights of Mr. Burkhalter were in the premises from Officer Darcy, but his inquiry was ignored;

"After attempting a second or perhaps a third time to ascertain what his and Mr. Burkhalter's rights were in the premises, Officer Darcy suddenly advised your deponent that he was under arrest and deponent was handcuffed and taken to the Gretna, Louisiana Lockup;

"Deponent was later advised that he was charged with disturbing the peace, under state law by using unnecessarily loud, insulting, and offensive language in such a manner as would foreseeably disturb and alarm the public, and under a Jefferson Parish ordinance for interfering with a police officer, Deputy LeBlanc, in the discharge of his duties as an officer;

"Deponent states that he committed neither of these offenses but conducted himself throughout in a quiet and gentlemanly manner, and that throughout the course of this incident described hereinabove he was not loud, not boisterous, nor was he impolite to the police officers; he used no insulting language, no offensive language of any type, nor did he attempt in any way to interfere with the police officers in the discharge of their duties * * *."

On oral argument of the motion, the court indicated that the affidavits submitted on behalf of the plaintiff might be insufficient to defeat the motion and urged counsel for the plaintiff to file further factual material, by way of affidavit, deposition or other discovery materials permitted by Rule 56. The attention of counsel was expressly directed to the provisions of Rule 56. Nonetheless, after repeated inquiry by the court concerning how much time plaintiff wished to have to submit such materials, counsel advised that he elected to stand on the record. Hence the court considers the separate issues as presented by the record:

## I. CLAIM FOR VIOLATION OF THE CIVIL RIGHTS ACT AND FOR DEPRIVATION OF RIGHTS UNDER THE FEDERAL CONSTITUTION AND FEDERAL LAWS

Plaintiff seeks, at least in part, to relitigate the validity of his conviction of a crime in state court. He was invited to show the court some factual evidence of a violation of his federal rights that could not have adequately been presented in state court. The state conviction might be dispositive of claims that could have been presented in that court, such as sufficiency of the evidence to sustain the conviction. On the other hand, if there were a conspiracy to deprive Mr. Martynn of his right to be served beer with a black friend, there might be no way to raise this issue in state court, and hence the state conviction might not determine the validity of the claim of conspiracy.

Counsel elected however to file no further material to indicate the existence of a genuine dispute concerning an issue of material fact, nor did he file material that would indicate in any other way that

his claims could not have been presented to the state court.

Faced with counsel's firm position, the court must conclude that the plaintiff can offer no further evidence than he has suggested. Indeed, in oral argument, counsel indicated that his position was that, since the crime charged in state court "arose out of" a matter involving alleged racial discrimination, it was ipso facto subject to re-examination here.

■ But the plaintiff is foreclosed from relitigating in this court the fact and the validity of his conviction in state court. With respect to this aspect of the case, the court adopts the rationale advanced in the scholarly opinion in Palma v. Powers, N.D.Ill., 1969, 295 F. Supp. 924, where the question was whether a conviction for gambling foreclosed re-litigation of the issue of fact whether telephones were unlawfully used for gambling.

Judge Hubert Will reasoned:

"The concept of issue preclusion developed largely in the context of civil litigation. It is designed, essentially, to prevent repetitious litigation of the same issue by the same parties. As it relates to civil actions, the concept of issue preclusion is in substance that any fact, question or matter in issue and directly adjudicated or necessarily involved in a determination of an action before a court of competent jurisdiction in which a judgment or decree is rendered on the merits, is conclusively settled by the judgment therein and cannot be relitigated in any future action between the parties or privies, either in the same court or a court of concurrent jurisdiction, while the judgment remains unreversed or unvacated by proper authority, regardless of whether the claim or cause of action, purpose or subject matter of the two suits is the same.

"The principles of issue preclusion apply in sequential criminal, as well as sequential civil litigation. Although traditionally the courts held that a conviction is not admissible in a subsequent civil action to prove issues determined in the criminal prosecution, this rule has been abandoned by a number of courts in recent years. The concept of issue preclusion has been applied on the basis of a prior criminal conviction in a substantial number of civil suits. Since issue preclusion is applicable in both criminal and civil litigation, there would seem to be no viable reason to bar its application in a civil suit simply because the initial litigation was in a criminal court. The rationale underlying preclusion generally supports its application regardless of the type of litigation involved." Id. at 933. See McCormick, The Law of Evidence, § 295 at 619 (1954);

Model Code of Evidence, Rule 521 (1942); Uniform Rules of Evidence, Rule 63(20) (limited to convictions for felonies); A. Vestal, Res Judicata: Preclusion, Chp. 12(E) (1) (c) at 383 (1969); Cowen, The Admissability of Criminal Convictions in Subsequent Civil Proceedings, 40 Calif.L.Rev. 225 (1952); Note, Admissability and Weight of a Criminal Conviction in a Subsequent Civil Action, 39 Va.L.Rev. 995 (1953).

■ Any other rule would lead to the absurdity of permitting relitigation in federal court of every state criminal conviction on the ground that some incident therein violated the rights of the accused or on the basis that the evidence was insufficient to sustain his conviction. But it is settled that the only basis for collateral attack on a state conviction in federal court is by way of habeas corpus. 28 U.S.C. § 2254; 1A Moore's Federal Practice § 0.230(2), at 2705 (1970) although of course certain criminal cases can be removed to federal court under 28 U.S.C. 1441 et seq.

As the *Palma* opinion points out, issue preclusion applies "only to those matters actually raised and adjudicated in the antecedent suit." Id at 933. See also cases cited therein, including Cromwell v. County of Sac, 1876, 94 U.S. 351, 24 L.Ed. 195.

█ The mere arrest, without grounds, of a person by someone acting under color of law, may be a violation of federal constitutional rights. 18 U.S.C. 242; Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Joseph v. Rowlen, 7 Cir. 1968, 402 F.2d 367; United States v. Ramey, 4 Cir. 1964, 336 F.2d 512; Cf. Whirl v. Kern, 5 Cir. 1969, 407 F.2d 781. Similarly, any conspiracy to deprive a person of any of his constitutional rights is reprobated, and the Civil Rights Act is not limited to racially discriminatory actions. 18 U.S. C. 241, 42 U.S.C. § 1983; Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492; Joseph v. Rowlen, 7 Cir. 1968, 402 F.2d 367. Cf. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

But in the present case the state court's determination of Martynn's guilt is ipso facto a determination that his arrest on the charge of which he was convicted was not groundless. And there is no evidence of a conspiracy to deprive him of his constitutional rights.

Indeed the present case is stronger than *Palma* for here the prior conviction is not offered as evidence of the *facts* upon which it is based, but to prove the conviction itself and thereby the validity of the arrest leading to it. In the Annotation, Conviction or Acquittal as Evidence of the Facts on which it was Based in Civil Action, 18 A.L.R.2d 1287 (1951), the authors point out, "[A]n increasing number of decisions have approved the admission of such evidence, reasoning that the safeguards afforded the accused under criminal procedure are greater than those in a civil action, so that he has no cause for complaint that an adverse decision arrived at under such restraints should be used against him, especially where it is admitted only as a prima facie evidence, subject to rebuttal." Id. at 1289.

As the United States Supreme Court observed in Emich Motors Corp. v. G.M.C., 1951, 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534: "It is well established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding. * * * Such estoppel extends only to questions 'distinctly put in issue and directly determined' in the criminal prosecution. * * * in the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment." (Citations omitted).

That case, of course, dealt primarily with the scope of Section 5 of the Clayton Act. But the statements quoted are of general application.

Therefore the plaintiff may not here relitigate the evidentiary basis for or the validity of his conviction in State court.

## II. TORTS OF FALSE ARREST AND FALSE IMPRISONMENT

██ The plaintiff is precluded by the doctrine of issue preclusion only from relitigating the validity of his arrest, and the validity of his conviction. But these being now established, his claims for false arrest, and false imprisonment must be dismissed. It is a complete defense to an action for false imprisonment or false arrest that the party did indeed commit the crime for which he was arrested. And, this is the result regardless of the reasonableness or unreasonableness of the arrest. See I. Harper & James, The Law of Torts § 3.18, at 280 (1956) and cases cited therein. Compare Res. Torts 2nd § 119–21.

The police officers who make an arrest may offer the defense of good faith and probable cause to a charge of false arrest or false imprisonment as a matter of tort liability. As stated by the Supreme Court, "We hold that the defense of good faith and probable cause, which the Court of Appeals found available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under § 1983." Pierson v. Ray, 1967, 386 U.S.

547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed. 2d 288.

The 5th Circuit Court of Appeals pointed out in Whirl v. Kern, 1968, 407 F.2d 781, why the defense of good faith is recognized in cases where false arrest is charged.

"There can be no quarrel with the fact that 'good faith' in the circumstances of an arrest is a necessary and historically validated defense. As said by the Supreme Court in *Pierson*, 'A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does.' 386 U.S. at 555, 87 S.Ct. at 1218, 18 L.Ed.2d at 295.

"The reasons for this broad protection are clear. An arrest is often a stressful and unstable situation calling for discretion, speed, and on-the-spot evaluation. Quinnette v. Garland, C.D. Cal.1967, 277 F.Supp. 999, 1002. As a result, constabulary latitudinarianism is important, and peace officers are and must be endowed with privileges not accorded to ordinary citizens. In the words of the editors of the Restatement of Torts, Second:

'The additional privilege is given because the peace officer has a duty to the public to prevent crime and arrest criminals; the performance of these duties would be seriously impaired unless peace officers were given considerable discretion in their performance and protected from liability for the consequences of honest and reasonable mistakes.' § 121, Comment (b) and (c) at 206." 407 F.2d at 790–791.

In the present posture of the case, there is no genuine issue of material fact as to the validity of the arrest, and where the alleged invalidity of the arrest is the sole basis for the claim of false imprisonment, that claim must likewise fall. See discussion in Whirl v. Kern, *supra*, distinguishing false imprisonment deriving from an arrest and false imprisonment where no arrest has occurred. 407 F.2d at 790.

There might indeed be a question concerning the court's jurisdiction over these claims since they are essentially merely tort claims arising under State law. But the court assumes, without deciding, that the plaintiff's tort claim here is sufficiently interwoven with his other claims to warrant consideration. See Sauls v. Hutto, E.D.La.1969, 304 F. Supp. 124.

### III. THE CLAIM FOR THREATS WHILE IN JAIL

Neither party's affidavits deal with this claim. Accordingly, the motion for summary judgment, as to it, is denied, at this time, without prejudice to either party.

### IV. THE CLAIM THAT CHIVLEATTO, LEBLANC AND DARCY CONSPIRED

Chivleatto and Darcy maintain that there was no conspiracy to deprive Martynn of his rights. Martynn refuses to submit any factual basis for contending that they did in fact conspire. The motion for summary judgment as to this issue is granted. If, on reconsideration the plaintiff moves within 10 days to re-open this aspect of the case (or any other aspect with respect to which he alleges there is in fact general dispute as to material fact), leave will be granted to file Rule 56 materials to indicate the existence of such an issue. If such an issue is shown, then the summary judgment will be vacated.

### V. OTHER CLAIMS

The court is uncertain at this juncture whether there are in fact any other claims by the plaintiff remaining. Accordingly, the plaintiff is ordered to present to the court within ten days, a memorandum setting forth these claims, if any, that are not disposed of by this opinion. Counsel for defendants will prepare a form of Judgment in accordance herewith and present it to counsel for the plaintiff for approval as to form.