587 F.2d 1052
 Josefina MENDOZA, a/k/a Fina Mendoza, a/k/a Josie Mendoza,
Plaintiff-Appellant,
v.
K-MART, INC., Tranquilino Perea and William D. Perry, Rose
Tomisato, Mark Owens and Donald Lease, Defendants-Appellees.
 No. 77-2037.
 United States Court of Appeals,
Tenth Circuit.
 Argued Nov. 13, 1978.
Decided Nov. 30, 1978.
 
 Larry R. Hill of Neumeyer & Hill, Las Cruces, N. M., for plaintiff-appellant.
 Randal W. Roberts of Atwood, Malone, Mann & Cooter, P. A., Roswell, N. M. (Bob F. Turner, Roswell, N. M., with him on brief, for K-Mart, Inc., and Edward E. Triviz, Las Cruces, N. M. on brief for Tranquilino, Perea and William D. Perry, Rose Tomisato, Mark Owens, and Donald Lease), for defendants-appellees.
 Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.
 HOLLOWAY, Circuit Judge.
 
 
 1
 This is an appeal from a judgment n. o. v. granted to defendants, setting aside a $15,000 verdict returned by the jury in favor of plaintiff Josefina Mendoza on her claims for malicious prosecution, false imprisonment, and false arrest. The case as originally brought in the district court alleged a violation of plaintiff's civil rights under color of state law, contrary to 42 U.S.C. §§ 1983, 1985 and 1986, with pendent jurisdiction asserted as to the state law claims. Following presentation of all the evidence, however, the trial judge dismissed the claim of a violation of the civil rights laws, finding that there was no state action in defendants' conduct, and submitted the case to the jury on the state tort claims alone. Plaintiff does not appeal from the dismissal of the claims sounding in federal law.
 
 
 2
 Plaintiff's claims stemmed from two incidents, both of which led to prosecutions against her for shoplifting. On March 23, 1975, Mendoza was in the K-Mart store in Las Cruces, New Mexico, obtaining a refund on an item previously bought there and apparently shopping for other items. As she was leaving the store (II R. 28) or once she was outside she was approached by Tranquilino Perea, the store's security manager, who asked her to come back into the store. Testimony as to exactly what happened at this point is conflicting. Mendoza says that Perea at this time accused her of not paying for merchandise which she had in her purse; Mendoza told Perea he was "crazy," and walked out to her car because "(t)here wasn't anything to stay there for." Perea, on the other hand, says that Mendoza re-entered the store with him, walked into the ladies' ready-to-wear department, hurriedly unzipped her purse and handed him two extension cords, and then "took off running outside." These were the cords which Perea says he had previously seen the plaintiff place in her purse and fail to pay for as she was initially leaving the store. Other witnesses testified that they saw Mendoza place the cords in her purse, and that she gave them to Perea after re-entering the store with him.
 
 
 3
 Mendoza drove home in her Mazda pickup truck, and Perea filed a criminal complaint against her with the Las Cruces police. Mendoza was served with an arrest warrant by a deputy sheriff of Dona Ana County who, acting under his own authority, changed the name on the warrant from Martinez (the name signed by plaintiff on the K-Mart refund slip) to Mendoza. Mendoza then went to the Las Cruces courthouse. She was told she could not leave until a $100 bond was arranged. She was not locked up but was allowed to remain there in the area where the cells are for 30 or 35 minutes until her husband brought the money for the bond.
 
 
 4
 At a hearing on May 7, 1975, held before Assistant City Judge Philip Steere, Tranquilino Perea served in the role of complaining witness for K-Mart. No city attorney was present to prosecute the case. Although Mendoza did not testify to deny the charges, and Perea related his observations concerning her K-Mart activities of March 23, Judge Steere dismissed the case because of the name-change made in the arrest warrant without the presence of a magistrate and because K-Mart had failed to introduce the extension cords as evidence by a proper motion. (Def.Ex. 1, 41-43). Judge Steere did testify at the federal trial, however, that but for the omissions mentioned, "(t)here is no doubt in my mind that I would have found (Mendoza) guilty in view of the fact of the evidence." (II R. 174).
 
 
 5
 The second incident occurred on November 11, 1976, when Mendoza was in the Las Cruces K-Mart store with her sister and son. By the plaintiff's own testimony, she was shopping for draperies to match a couch which she had just bought elsewhere. After first looking in the drapery section, she went outside to get a pillow from the couch (which was in her sister's car) and brought it back with her to use for matching purposes. Mendoza testified that when the curtain salesperson was rude and unhelpful she and her sister decided to leave the store.
 
 
 6
 As she was leaving without buying anything, Mendoza was stopped by Rose Tomisato (K-Mart's security manager) and told she had to go with her to the back room. There, plaintiff saw Tomisato "taking down a price thing from a black pile of material that she had on the desk" apparently the dress that Mendoza was later accused of shoplifting. Following this detention at the store of about ten or fifteen minutes, Mendoza was taken into custody by police and a criminal complaint was filed against her by Tomisato and other K-Mart employees. Mendoza says that during this incident Tomisato announced: "This is Josefina Mendoza. She is suing us for $150,000. We are going to see about that."[1] The security manager also assertedly told the police: "I want it done right this time" and "(t)his means $150,000 to me."
 
 
 7
 Defendants' witnesses tell a much different story of this second incident. Basically, Tomisato and others say they watched the plaintiff from an observation window as she wheeled a shopping cart between the domestics and ready-to-wear departments, first carrying two red dresses which were later exchanged for a black dress; finally, she "weaved around" the counters in domestics until, at one point, she crumpled or rolled up the black dress and concealed it in her purse. Mendoza then walked out of the store not paying for the dress on the way out and it was when she was at her sister's car that she was approached by Tomisato, Donald Lease and Mark Owens and told to come with them. Tomisato and the others saw the black dress concealed under the passenger's seat. Tomisato admits making remarks at the time of Mendoza's detention concerning the $150,000 suit filed by the plaintiff against K-Mart and defendants Perea and Perry. She says that she had wanted to accompany Mendoza to the police station because she was aware that the prior case against the plaintiff had been dismissed in part because of problems with the warrant, and she "didn't want to have to go through the same thing that was done before."
 
 
 8
 Mendoza was tried for shoplifting in this second incident in the City Court of Las Cruces on January 19, 1977, and again she did not testify. She was found guilty by the judge, and took an appeal. The case had not gone to trial on the appeal at the time of the federal court trial.[2]
 
 
 9
 * JURISDICTION TO TRY THE STATE LAW CLAIMS
 
 
 10
 Since only the plaintiff appealed from the judgment below, it would seem inappropriate for this court to consider defendants' objections (Appellees' Brief 5-8) to the district court's discretionary exercise of pendent jurisdiction over the state law claims, unless it is decided that judgment n. o. v. was wrongly granted. See Montgomery Ward & Co. v. Duncan,311 U.S. 243, 254, 61 S.Ct. 189, 85 L.Ed. 147 (dictum); Zimmerman v. Mathews Trucking Corp., 205 F.2d 837 (8th Cir.). However, this court may Sua sponte question jurisdiction, in the sense of a court's power to hear a case, and so it seems proper to decide at the outset whether the district court possessed such power as to the state law claims especially since defendants make a strong argument that it lacked such power.
 
 
 11
 As stated in United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, in order for pendent jurisdiction to exist as a matter of power, the "federal claim (in a case) must have substance sufficient to confer subject matter jurisdiction on the court." Plaintiff's claim under the federal civil rights laws is based on the premise that defendants' actions effectively constituted state action by virtue of the New Mexico shoplifting statute, N.M.S.A. § 40A-16-19 Et seq.[3] Defendants argue, however, that such a federal claim is rendered constitutionally insubstantial by decisions in many jurisdictions which hold that statutes similar to N.M.S.A. § 40A-16-22 do not confer state action "status" on merchants who act in reliance on their provisions. See, e. g., Draeger v. Grand Central, Inc., 504 F.2d 142 (10th Cir.); Estate of Iodice v. Gimbels, Inc., 416 F.Supp. 1054 (E.D.N.Y.); Battle v. Dayton-Hudson Corp., 399 F.Supp. 900 (D.Minn.); Warren v. Cummings, 303 F.Supp. 803 (D.Colo.); Weyandt v. Mason's Stores, Inc., 279 F.Supp. 283 (W.D.Pa.).
 
 
 12
 It is clear, however, that the courts are not unified in their approach to this sort of question. See, e. g., Duriso v. K-Mart No. 4195, 559 F.2d 1274, 1277-78 (5th Cir.); DeCarlo v. Joseph Horne and Co., 251 F.Supp. 935 (W.D.Pa.); Thompson v. McCoy, 425 F.Supp. 407 (D.S.C.). Our opinion in Draeger v. Grand Central, Inc., supra, is not dispositive as to these circumstances. Draeger dismissed the § 1983 claim as to a department store defendant for lack of state action, but said that the off-duty policeman working as a security guard for the store could be liable under § 1983. In the instant case the plaintiff made factual allegations such as that defendants in the first incident actually prosecuted the shoplifting case in lieu of a city attorney (II R. 69, 118, 165, 166) which perhaps point more strongly to a state action finding than the facts outlined in cases dismissing the § 1983 claim.
 
 
 13
 We need not and do not decide whether a proper § 1983 claim was asserted. We hold only that on this state of the facts and law, it cannot be said that plaintiff's federal claim was so insubstantial as to deprive the district court of power to hear related state-law claims. The court thus had jurisdiction and could exercise discretion to retain pendent jurisdiction over the state law claims. See Transok Pipeline Co. v. Darks, 565 F.2d 1150, 1155 (10th Cir.), Cert. denied, 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388).
 
 II
 
 14
 THE CLAIMS OF ERROR IN THE GRANTING OF JUDGMENT N.O.V.
 
 
 15
 In its order granting the defendants' motion for judgment n. o. v., the district court considered each cause of action malicious prosecution and false imprisonment separately as it related to the two incidents at K-Mart. Following is a review of each claim arising from the two incidents.
 
 
 16
 a. The March 23, 1975, incident
 
 
 17
 As pointed out by the district court, in order to maintain an action for malicious prosecution in New Mexico a plaintiff must show that the criminal prosecution against him "finally terminated in his acquittal." Apodaca v. Miller, 79 N.M. 160, 441 P.2d 200, 203; Hughes v. Van Bruggen, 44 N.M. 534, 105 P.2d 494, 498-99; Delgado v. Rivera, 40 N.M. 217, 57 P.2d 1141, 1148. Other New Mexico cases indicate that acquittal As such is not required, and that an action for malicious prosecution can be maintained if the underlying criminal case merely "terminated in (the plaintiff's) favor." Meraz v. Valencia, 28 N.M. 174, 210 P. 225, 227.[4] See also Marchbanks v. Young, 47 N.M. 213, 139 P.2d 594, 597. The predominant emphasis on acquittal, however, together with the meaning of "favorable termination" fleshed out in Meraz and Marchbanks,[5] would support a view of New Mexico law allowing recovery for malicious prosecution Only if the criminal prosecution against the plaintiff is disposed of in a way which indicates his innocence. Cf. Restatement, Second, Torts § 660 comment (a).
 
 
 18
 This apparently was the view of the district court in granting judgment n. o. v. on the malicious prosecution claim arising from the March, 1975 incident.[6] We defer to a resident district judge's view on an unsettled question of state law unless it appears clearly wrong. Parsons v. Amerada Hess Corp., 422 F.2d 610, 614 (10th Cir.). Applying his interpretation to the evidence adduced at trial, and assessing the case under a judgment n. o. v. standard, it is evident that the district court did not err in its malicious prosecution ruling. Even considering the evidence in the light most favorable to plaintiff, Wilkins v. Hogan, 425 F.2d 1022, 1024 (10th Cir.), Mendoza failed to show a termination indicating her innocence on the first shoplifting charge. Indeed, the testimony of one of Mendoza's own witnesses, Municipal Judge Steere, shows that the termination resulted from omissions in proof and procedural errors, as noted earlier. (II R. 174). See Delgado v. Rivera, supra, 57 P.2d at 1147.
 
 
 19
 On this record, we are satisfied that no reasonable person could conclude that Mendoza had made out the essential element that she was acquitted in the first shoplifting case or that it had "terminated favorably" to her. See Taylor v. National Trailer Convoy, Inc., 433 F.2d 569, 571-72 (10th Cir.). Hence, as to this malicious prosecution claim it was proper to grant judgment n. o. v. and to set aside the verdict which had "no basis in fact." Champion Home Builders v. Shumate, 388 F.2d 806, 808 (10th Cir.).
 
 
 20
 As to the false imprisonment claim, the district court's rationale for granting judgment n. o. v. is that "(Mendoza), herself, testified that the March (1975) occurrence had involved no detention." One basic element of such a claim is that the plaintiff be confined or restrained in some unlawful way by the defendant. Restatement, Second, Torts § 37 (False Imprisonment). The restraint constituting false imprisonment
 
 
 21
 may arise out of words, acts, gestures or similar means which induce reasonable apprehension that force will be used if the plaintiff does not submit and it is sufficient if they operate upon the will of the person threatened and result in a reasonable fear of personal difficulty or personal injuries.
 
 
 22
 Martinez v. Sears, Roebuck and Co., 81 N.M. 371, 467 P.2d 37, 39 (Ct.App.). Confinement in jail or holding in custody is not necessary, and the restraint need only be for a brief time.
 
 
 23
 Notwithstanding this broad definition of restraint for false imprisonment purposes, it is clear that Mendoza suffered no wrongful confinement on March 23, 1975, for which appellees are legally responsible. At various points in her testimony Mendoza indicated that she was not restrained at the K-Mart store during the first incident. When confronted by Perea and accused of removing merchandise without paying for it, Mendoza denied the accusation and left because "(t)here wasn't anything to stay there for." (II R. 30). Perea himself merely went back into the store at this point and never tried to grab, stop or hold Mendoza or take anything out of her purse. Mendoza also agreed during cross-examination that she was "in no way detained" by Perea. Thus, Mendoza's own evidence "points all one way" on the question whether she was restrained at the store in the first incident. Bertot v. School District No. 1, 522 F.2d 1171, 1175 (10th Cir.). Mendoza endured no tortious confinement at that point.[7]
 
 
 24
 As for Mendoza's arrest and temporary jailing by the police on March 23, 1975, on the facts presented here the appellees could not be held liable for such actions on false imprisonment grounds.[8] See Restatement, Second, Torts § 45A, comment (c) (False Imprisonment). See also id. at § 37, comment (b); Sarwark Motor Sales, Inc. v. Woolridge, 88 Ariz. 173, 354 P.2d 34, 39. Cf. Apodaca v. Miller, supra, 441 P.2d at 203.
 
 
 25
 On this point the evidence again supports only the conclusion that the appellees cannot be held liable, thus justifying a judgment n. o. v. in their favor. See Derr v. Safeway Store, Inc., 404 F.2d 634, 636 (10th Cir.). While it is undoubtedly true that the police would not have "bothered" Mendoza if the K-Mart employees had not signed a criminal complaint against her, (II R. 111), there is no evidence that any of the defendants took an active part in the March 1975 arrest or that they were responsible for the alteration of the warrant and complaint which ultimately rendered the arrest invalid. Indeed, one of Mendoza's own witnesses, Deputy Sheriff Telles, testified that no K-Mart personnel were present at the arrest, that he had no "understanding" with anyone from K-Mart regarding the arrest, and that the warrant was altered by his own authority and with no influence from appellees.
 
 
 26
 Thus there was no basis for a false imprisonment claim in connection with the March 23, 1975, incident and the judgment n. o. v. was proper as to that claim.
 
 
 27
 b. The November 11, 1976, incident
 
 
 28
 As to this second incident, Mendoza's own evidence established that she was in fact convicted of shoplifting. She presented no evidence to establish that she was acquitted or that the prosecution terminated favorably to her.[9] Thus, the trial judge properly granted judgment n. o. v. as to the malicious prosecution claim based on this second incident.
 
 
 29
 The false imprisonment claim arising from the November 1976 incident is more troublesome. Although lack of probable cause is not a traditional element of a cause of action for false imprisonment, See Annotation, 137 A.L.R. 501, the New Mexico shoplifting statute[10] makes probable cause an affirmative defense to such an action. In discussing this defense to the false imprisonment claim, the district judge stated that "(s)ince the New Mexico Courts have held that conviction of shoplifting charges constitutes prima facie evidence of probable cause in the context of an action for malicious prosecution, that standard seems to be equally applicable here." We accept this interpretation of New Mexico law. See, e. g., Delgado v. Rivera, supra, 57 P.2d at 1147.
 
 
 30
 There was thus prima facie evidence of probable cause to detain Mendoza in the November 1976 incident,[11] and the trial judge, in granting judgment n. o. v. on the second false imprisonment claim, held that Mendoza "failed to rebut such a prima facie showing." (District Court Order, p. 3).
 
 
 31
 In this regard Mendoza testified that she did not take or conceal or attempt to conceal the black dress in question. She also testified that, when she was brought back into the store, the dress was already in the office and she concluded that the store employees had set her up. (II R. 73-74, 93). It is thus true that there is a conflict of testimony between plaintiff Mendoza and the three defendant employees who testified that they saw her take the black dress, and this does give support to her argument that a judgment n. o. v. was improper. And further support for her position is found in the dissent in Martinez v. E. J. Korvette, Inc., 477 F.2d 1014, 1017-19 (3d Cir.).
 
 
 32
 However, the conviction by an independent fact-finder is a strong showing that there was some reason to detain the shopper pursuant to the state shoplifting statute. Cf. Vincioni v. Phelps Dodge Corp., 35 N.M. 81, 290 P. 319, 320; Delgado v. Rivera, supra, 57 P.2d at 1147. It appears that the district judge, by concluding that Mendoza had failed to rebut the prima facie showing of probable cause furnished by the conviction, was upholding the general policy of New Mexico law disfavoring collateral attacks on judgments of conviction, expressed in Delgado v. Rivera, supra, 57 P.2d at 1147:[12]Since a recovery in an action for malicious prosecution is predicated directly upon a want of probable cause, permitting such a recovery would naturally constitute a collateral attack upon the judgment of conviction. For as is said by the courts generally, the latter is conclusive evidence as to the existence of probable cause. In that sort of a situation, the law looks with disfavor at the resulting multiplicity of suits and is very reluctant about granting a person who has been convicted a hearing, the very nature of which must question the wisdom or validity of the decision of a court of record and therefore refuses to inquire as to probable cause at all. . . . 'Courts time and again have declared that matters once adjudicated should not be again drawn in issue while the former adjudication remains in force . . . . The parties must come prepared at the (criminal) trial to vindicate themselves and to detect the falsity of the testimony, for a losing party cannot collaterally attack a judgment simply because he was not prepared to meet his adversary at the first trial.'
 
 
 33
 The New Mexico Supreme Court has also said in another malicious prosecution case that a conviction, though reversed, is at least prima facie evidence of probable cause. Vincioni v. Phelps Dodge Corp., supra, 290 P. at 320. This view of the conviction as prima facie evidence of probable cause was the view expressed by the trial judge in the instant case, thus allowing for the possibility of rebutting the effect of conviction. In that connection it has been recognized that such prima facie evidence of probable cause by a conviction may be overcome by showing that the conviction was obtained through corruption, perjury, or other unfair means. See Martinez v. E. J. Korvette, Inc., 335 F.Supp. 886 (E.D.Pa.), Aff'd, 477 F.2d 1014 (3 Cir.); Restatement (Second) of Torts § 667; Prosser, Law of Torts § 113 (3d ed.).
 
 
 34
 We feel that the trial judge was following reasoning along this line as the proper view of New Mexico law, and we accept his ruling as a reasonable interpretation of the law of his State. We agree that where the facts are in dispute, probable cause is a question of fact for the trier of the facts. See Patton v. Guyer, 443 F.2d 79, 85 (10th Cir.); Yucca Ford, Inc. v. Scarsella, 85 N.M. 89, 509 P.2d 564, 566 (Ct.App.). However, plaintiff, Mendoza did not sufficiently rebut the effect of the conviction so as to raise a fact question by presenting evidence that the conviction was obtained by corruption, perjury or other unfair means.[13] Therefore, as to this remaining false imprisonment claim relating to the November 1976 incident, we again conclude that we should not reverse the judgment n. o. v.
 
 
 35
 AFFIRMED.
 
 
 
 [1]
 Mendoza had already filed this suit against K-Mart and defendants Perea and Perry on the basis of the first incident, seeking $150,000 in damages
 
 
 [2]
 An appendix to appellees' brief makes a representation as to the disposition of the appeal but this material is not within our record. There is no proof in the record on the disposition of that appeal
 
 
 [3]
 Of particular note, N.M.S.A. § 40A-16-22 provides in part that:
 (i)f any . . . merchant has probable cause for believing that a person has willfully taken possession of any merchandise with the intention of converting it without paying for it, or has willfully concealed merchandise, and that he can recover the merchandise by detaining the person or taking him into custody, the . . . merchant may, for the purpose of attempting to affect (sic) a recovery of the merchandise, take the person into custody and detain him in a reasonable manner for a reasonable time. Such taking into custody or detention shall not subject the . . . merchant to any criminal or civil liability.
 
 
 [4]
 There are several elements to a malicious prosecution claim as the Delgado case illustrates, but consideration of this favorable termination element suffices in this case
 
 
 [5]
 Both Meraz and Marchbanks indicate that the entry of a Nolle prosequi without the consent of the defendant would constitute termination of the criminal matter in his favor. On the other hand, the compromise discussed in Marchbanks, whereby the defendant effected restitution but was not actually found guilty of passing bad checks, did Not constitute favorable termination. The results reached in these situations seem to turn on how substantial the case against the defendant is in the first instance
 
 
 [6]
 The basis for the trial judge's opinion is not entirely clear, with some discussion going to the nature of the disposition of the first case against Mendoza, but concluding with a remark on Mendoza's "other evidence on the element of lack of probable cause." (District Court Order, p. 2). Since lack of acquittal or favorable termination can dispose of Mendoza's malicious prosecution claims without regard to the question of probable cause, we need not discuss that aspect of the claims
 
 
 [7]
 As stated in Martinez, supra, 467 P.2d at 40, "when a customer is free, at every moment during an encounter with an employee of a store, to walk away without any present and immediate adverse consequences, as a matter of law, there may not be a finding of seizing, detaining and searching resulting from such an encounter."
 
 
 [8]
 The district judge made no mention of Mendoza's being held by the police in the aftermath of the first incident, as if the police actions (though brought out early at trial) were not relevant to an assessment of appellees' civil liability here
 
 
 [9]
 That Mendoza's conviction was on appeal at the time of trial in this case has no bearing on the effect that was properly to be given it. See Delgado v. Rivera, supra, 57 P.2d at 1147
 
 
 [10]
 N.M.S.A. § 40A-16-22. See n. 3 Supra
 
 
 [11]
 Unlike the March 1975 incident, there is no question that K-Mart through its employees did detain Mendoza on November 11, 1976
 
 
 [12]
 Cf. Bergstralh v. Lowe, 504 F.2d 1276, 1278-79 (9th Cir.), Cert. denied, 420 U.S. 930, 95 S.Ct. 1131, 43 L.Ed.2d 402; Metros v. District Court, 441 F.2d 313, 315-17 (10th Cir.); Martynn v. Darcy, 333 F.Supp. 1236, 1240-41 (E.D.La.)
 
 
 [13]
 No New Mexico case which we have found adopts the Martinez exception to the effect of a judgment of conviction, but we believe that a similar more demanding standard was being applied by the trial judge here. Though Mendoza directly disputed the defendants' testimony in the second shoplifting case, this alone did not overcome the effect of the prior conviction. See Martinez v. E. J. Korvette, Inc., supra, 477 F.2d at 1016-17