**Morry P. WEINSTEIN and G.B. Munn, Plaintiffs,**

v.

**Robert MUELLER, III, et al., Defendants.**

**No. C–80–2919 SC.**

United States District Court, N.D. California.

Dec. 15, 1982.

Bartholomew Lee, San Francisco, Cal., for plaintiffs.

John F. Barg, Asst. U.S. Atty., San Francisco, Cal., Harold D. Morgan, Portigal & Hammerton, Santa Ana, Cal., for Carl Armbrust, Harold D. Morgan, Thomas Avdeef and County of Orange.

David Bancroft, Sideman, Bancroft & Sutton, San Francisco, Cal., for Joseph W. Caramucci.

Robert Hanson, Law Offices of George H. Chula, Santa Ana, Cal., for Walter McAllister.

## ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

CONTI, District Judge.

The facts of this case were summarized in this court's order of February 10, 1981, and will not be repeated here. Additional facts will be discussed as necessary. By the February 10, 1981, order a number of claims were partially or completely dismissed. The matter is currently before the court on the motions of the federal defendants and the Orange County defendants for summary judgment on the remaining claims against them. For clarity, the following discussion divides the claims into four main categories: (1) the claims against Assistant United States Attorney (AUSA) Mueller; (2) the claims against other non-Internal Revenue Service (IRS) defendants; (3) the claims against the Orange County defendants; and (4) the claims against the IRS defendants.

## I. STANDARD FOR RULING ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper only where there is no issue of material fact or where, viewing the evidence and the inferences that may be drawn in the light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law. *Radobenko v. Automated Equipment Corp.,* 520 F.2d 540, 543 (9th Cir.1975); *Caplan v. Roberts,* 506 F.2d 1039, 1042 (9th Cir.1974). On a motion for summary judgment, the trial court does not try issues of fact. Examining the entire record, it decides the limited question of whether any factual issue exists *Radobenko v. Automated Equipment Corp.,* 520 F.2d at 543. The moving party has the burden of showing the absence of a genuine issue as to any material fact. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

## II. CLAIMS AGAINST AUSA MUELLER

The acts alleged against defendant Mueller have been conveniently broken down by plaintiffs into four categories: (1) subornation of perjury; (2) suppression of exculpatory evidence in both the federal and state prosecutions; (3) in-field investigation of witnesses; and (4) activities connected with the instigation of the Orange County prosecution. Mueller argues that as an AUSA

he is immune from liability for these acts. Mueller is also alleged to have used illegal wiretaps.

■ In general, prosecutors are immune from liability for acts performed in the scope of their authority that are an "integral part of the judicial process". *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 994, 47 L.Ed.2d 128 (1974). Where a prosecutor abandons his prosecutorial role, however, and acts as an investigator or administrator, he is entitled only to qualified immunity. *Robichaud v. Ronan,* 351 F.2d 533, 537 (9th Cir.1965). In determining what acts are prosecutorial or investigative, a functional approach is used. *Id.* at 536.

### A. *Subornation of Perjury*

■ Plaintiffs assert that Mueller not only used perjured testimony, but also actively encouraged and threatened witnesses, i.e., Mulqueen and McAllister, in order to obtain it. The specific acts alleged to have been done to obtain the testimony occurred mainly during the course of the Orange County and federal prosecutions.

The knowing use of perjured testimony is immunized by *Imbler.* This court sees no difference here between the knowing use of perjured testimony and the solicitation of it. If prosecutorial immunity did not cover the latter as well as the former, the protections of *Imbler* would disappear simply by the addition of another stock allegation. *See Tate v. Grose,* 412 F.Supp. 487, 488 (E.D.Pa. 1976).

The undisputed facts of this case demonstrate that the majority of the acts complained of (including those not relating to subornation of perjury) took place during the course of the federal or state prosecutions (see discussion in part II D below). Certain alleged acts, however, apparently

occurred after the federal charges were dropped and before state charges were made. The acts were nevertheless an integral part of an on-going prosecutorial effort. Although different facts might lead to another conclusion, under the facts of this case the court finds that the alleged acts are more closely related to preparation for trial than investigative in nature, and are within the scope of the immunity. *Robichaud v. Ronan,* 351 F.2d at 536.

### B. *Suppression of Exculpatory Evidence* [1]

■ Suppression of exculpatory evidence is clearly within prosecutorial immunity. *Imbler v. Pachtman,* 424 U.S. at 424, 96 S.Ct. at 992; *Briggs v. Goodwin,* 569 F.2d 10, 24 (D.C.Cir.1977), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978).

### C. *In-field Investigations*

Plaintiffs allege that Mueller slandered Weinstein in the course of his investigation of witnesses. The evidence shows that on most, if not all, of these occasions Mueller identified himself as an AUSA and was accompanied by an agent of either the Drug Enforcement Agency (DEA) or the Federal Bureau of Investigation (FBI).

■ Government officials are absolutely immune from liability for state claims [2] if they are acting within the "outer perimeters of their duties." *Miller v. Delaune,* 602 F.2d 198, 200 (9th Cir.1979). As noted in *Imbler,* the duties of a prosecutor include interviewing witnesses, whether in the role of a prosecutor or an investigator. 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33. Here the interviews all took place after Weinstein's arrest and were directly connected with the charges brought against him. Therefore, Mueller was acting within the scope of his authority and is immune from liability for the alleged slander.

---

1. Although all the federal defendants were named in this count, plaintiffs' papers indicate they intend the claim to apply only to Mueller. In any case, there is no evidence supporting the claim against any other defendant. Summary judgment in favor of all the other defendants is therefore appropriate.

2. In their papers, plaintiffs argue that the alleged slander constitutes a constitutional violation. This argument was raised and decided adversely to plaintiffs in the February 10, 1981, order.

In count four, Weinstein alleges that Mueller interfered with contractual relations relating to his law practice. While the alleged acts may not be within the outer limits of Mueller's duties and therefore not immunized, there is no support for this claim in the record. Summary judgment is appropriate.

### D. *Orange County Prosecution*

The initial issue in Mueller's involvement with the Orange County prosecution is whether he was acting within the scope of his authority. Plaintiffs allege that Mueller was instrumental in the initiation of that prosecution. It is clear, however, that state officials actually brought the charges and carried out the prosecution.

Government officials are acting within the scope of their authority if the acts complained of are not palpably beyond their authority and are "more or less connect[ed] with the general matters committed by law to their control or supervision." *Mark v. Groff,* 521 F.2d 1376, 1379 n. 4 (9th Cir.1975). United States Attorneys and their assistants are charged by statute with enforcing the laws of the United States. 28 U.S.C. § 547. State and federal law enforcement personnel have historically cooperated, however, and this policy is likewise embodied in statute. *See* Law Enforcement Assistant Act of 1965, Pub.L.No. 89–798, 80 Stat. 1506 (1966). Cooperating with other law enforcement agencies can clearly aid federal authorities in carrying out their more precise functions. Therefore, Mueller was acting within the scope of his authority while assisting with the Orange County prosecution, and his acts in that regard are entitled to the same immunity as his acts in furtherance of the federal prosecution.

### E. *Illegal Wiretaps*

Plaintiffs allege that conversations were intercepted by the use of illegal wiretaps. Although not mentioned in the complaint, plaintiffs also now seek damages for the insertion of "beepers" in the crates containing the hashish.

Plaintiffs cannot seek redress for the violation of other persons' Fourth Amendment rights. In particular, they cannot object if other peoples' conversations were overheard, *Alderman v. United States,* 394 U.S. 165, 176, 89 S.Ct. 961, 968, 22 L.Ed.2d 176 (1969), and cannot challenge the insertion of the "beepers" unless they show that they had a legitimate expectation of privacy in the crates, *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980).

Defendants have submitted evidence showing that neither Weinstein's nor Munn's conversations were overheard. Plaintiffs rely only on the complaint to refute this. The complaint, although verified, is not based on personal knowledge, and therefore may be disregarded on a motion for summary judgment. Fed.R.Civ.P. 56. Accordingly, plaintiffs have no standing to object to any wiretapping.

Plaintiffs also have not demonstrated a reasonable expectation of privacy in the crates. The undisputed facts show that at all times plaintiffs were acting on behalf of Weinstein's client and exhibited no interest in the crates on their own behalf.

### III. CLAIMS AGAINST OTHER NON-IRS FEDERAL DEFENDANTS

### A. *Seizure of Weinstein's Car*

Plaintiffs allege that Weinstein's burgundy Cadillac was illegally seized and that DEA agents used it for under cover operations while it was in the government's possession.[3] It is undisputed that Weinstein drove in the car to pick up and pay for the crates containing the hashish. The crates were loaded into a truck and Weinstein accompanied the truck in his car from San Francisco to the warehouse site in Concord where the crates were to be stored. There

---

3. In their reply brief, the non-IRS federal defendants argue for the first time that this count should be dismissed for failure to state a claim for relief because no agents are alleged to have participated in the seizure and use of the car. The court considers a reply brief an inappropriate place to raise such an argument and therefore will not consider it.

is no claim that any controlled substances were transported in the car.

The car was returned to Weinstein in late December 1978. A few weeks later Weinstein had the car serviced. The mileage record, according to both parties, showed that the car had been driven more than 1,000 miles since its seizure. Defendants argue that Weinstein must have added the mileage himself. Supported by appropriate documents, Weinstein refutes this.

■ By statute, "[a]ll conveyances, including . . . vehicles . . . which are used, or are intended for use, to transport, or in any manner facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances] are subject to forfeiture." 21 U.S.C. § 881(a)(4). Although use of a vehicle merely to transport a person to the site of illegal activity will not support forfeiture, *Howard v. United States,* 423 F.2d 1102, 1103 (9th Cir.1970), it is sufficient if there is probable cause to believe that the vehicle was used in any way to aid in the transfer of contraband, *United States v. Kimak,* 624 F.2d 903, 905 (9th Cir.1980).

■ There was probable cause for the seizure of the car. Weinstein did more than simply drive in it to make the purchase; he then participated in a convoy-type operation with another vehicle in assuring that the crates, which the agents had reason to believe contained contraband, arrived safely at their destination.

Weinstein bases his argument that the seizure was illegal on Mueller's statements in a memo explaining why the car should be released. This is not sufficient to raise a question of fact and does not demonstrate lack of probable cause; the fact that there was no longer a reason to hold the car does not imply that the car was wrongfully seized in the first place. Likewise, the fact that Weinstein was ultimately acquitted in state court does not show that the seizure was improper.

The record also does not present questions of fact regarding the extra mileage. Accepting Weinstein's position that the DEA added the mileage, the court does not consider an additional 1,000 miles so exhorbitant or inconsistent with any duty the DEA may have to keep the car in good condition as to warrant further consideration.

### B. *Other Claims*

■ There are no claims for relief addressing factual allegations against DEA agents Fiorentino and Wakabyashi. There are suggestions, however, that plaintiffs wish to assert a claim of false arrest against them. To the extent that the complaint can be read to support such a claim, it is barred by collateral estoppel. In the federal criminal case the district court judge specifically found that the arrests were made on probable cause. This finding was necessary to the court's ruling on a motion to suppress.

### IV. CLAIMS AGAINST THE ORANGE COUNTY DEFENDANTS

#### A. *Claims Against the Individual Defendants*

■ Plaintiffs' claims against the Orange County individual defendants, Carl Armbrust, Harold Morgan, and Thomas Avdeef, are as follows:

(1) they conspired to wrongfully convict plaintiffs in the Orange County prosecution;

(2) they sought to obtain plaintiffs' convictions without regard to their guilt or innocence;

(3) they falsely arrested and imprisoned plaintiffs and set or recommended excessively high bail;

(4) defendant Avdeef wrongfully taped an interview for use with Weinstein and prepared a false transcript of the interview for use in the Orange County prosecution;

(5) Armbrust and Avdeef suborned perjury and used perjured testimony;

(6) Armbrust and Avdeef suppressed exculpatory evidence during the trial in Orange County; and

(7) Armbrust slandered the plaintiffs.

Defendants seek summary judgment on all these claims. They argue that they are immune on the claims numbered (1) through (6) above, and, with regard to claim (7), they argue additionally that Armbrust did not slander the plaintiffs.

The doctrine of prosecutorial immunity has already been fully discussed above. In accordance with that principle, the court finds that the defendants are immune from liability, with the exception described below, for the acts complained of in claims numbered (1) through (6) above. The instigation of arrest after indictment by a grand jury, the initiation of search pursuant to a warrant, and bail recommendations are all immunized actions. *Sykes v. State of California (Dept. of Motor Vehicles),* 497 F.2d 197, 200–01 (9th Cir.1974). All the other acts took place after charges had been filed and therefore were part of the prosecutorial role.

The record shows that Avdeef's official title was Investigator from February 1976 until December 24, 1979. On that date he began acting as a Deputy District Attorney. Avdeef is entitled to absolute prosecutorial immunity only while he was officially a prosecutor, i.e., on or after December 24, 1979. For acts occurring before that, he is immune from liability under the doctrine of qualified immunity as set forth in *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ As to the slander count, the evidence presented by defendants shows that no slander occurred, and plaintiffs have presented no competent evidence to the contrary. Accordingly, summary judgment is appropriate.

### B. *Claims Against Orange County*

Plaintiffs are suing not only individual Orange County personnel, but the County itself. They have alleged that the defendants "acted pursuant to the policy and custom of the District Attorney's Office of Orange County." In support of this allegation they submit an affidavit of Walter McAllister, who testified against plaintiffs in the Orange County trial. McAllister states that he was forced to give false and misleading testimony and that this testimony was used by the defendants in several different trials. Plaintiffs claim this establishes a policy of using false evidence, and also that the position of defendants Morgan and Armbrust is such that official policy may be inferred from their acts. Finally, they argue that failure of defendants' supervisors to intervene shows existence of an official policy.

■ A local government can be held liable for the constitutional deprivations caused by its employees only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" inflicts the injury. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Failure of persons in policy-making positions to correct the actions of employees under their control is sufficient to show official policy or custom where the policy-maker knew or was on notice of illegal conduct. *Harris v. City of Roseburg,* 664 F.2d 1121, 1130 (9th Cir. 1981); *Turpin v. Mailet,* 619 F.2d 196, 201– 02 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980).

■ The individual defendants here are Assistant District Attorneys. Such persons, like Assistant United States Attorneys, generally do not make policy decisions, and there is no evidence to the contrary. Therefore, official policy cannot be inferred from the acts of the defendants alone.

There is also no evidence that the District Attorney knew or should have known of the alleged creation of false evidence. The only evidence plaintiffs present to show the County's knowledge is McAllister's declaration. McAllister only revealed his alleged perjury after the events relevant to this case. Plaintiffs have failed to show that County policy-makers were or should have been aware of any illegality on the part of the defendants. Summary judgment in defendants' favor is therefore granted.

## V. CLAIMS AGAINST THE IRS DEFENDANTS

Only plaintiff Weinstein is involved in the claims against the IRS defendants. Of the IRS agents originally named as defendants only three remain, Utaski, Jackson, and Caramucci. Count eleven charges agents Utaski and Jackson with carrying on an unlawful tax investigation, and in particular, with issuing unnecessary multiple summonses. Count twelve charges Caramucci with unlawful disclosure of confidential tax information. The defendants argue that these claims are barred by collateral estoppel and that Utaski and Jackson are immune.

### A. Collateral Estoppel

Defendants argue that the question of whether there was an unlawful investigation or unlawful disclosure was previously litigated and decided in an IRS summons enforcement action, *United States v. Stuckey*, No. C–79–0982 SC (N.D.Cal. Sept. 24, 1979) (order enforcing summonses), *aff'd.*, 646 F.2d 1369 (9th Cir.1981), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1436, 71 L.Ed.2d 653 (1982).

In *Stuckey*, the IRS sought to obtain records regarding Weinstein's tax returns from third-party record holders. Weinstein tried to block the summonses, arguing that the IRS was acting as an investigative tool for the Department of Justice in relation to the criminal proceedings involved in this case. After holding an evidentiary hearing, this court found that the summonses were issued in good faith and ordered them enforced. The Court of Appeals for the Ninth Circuit affirmed.

In order for collateral estoppel to bar presentation of an issue, the identical issue must have been actually litigated and necessarily decided in a prior action. *Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 (9th Cir.1980). The party asserting collateral estoppel has the burden of demonstrating its application. *Id.* The court

finds application of collateral estoppel appropriate here.

While the emphasis in *Stuckey* was on the institutional good faith of the IRS and the chief concern here is the good faith of the individual defendants, the court of appeals decision indicates that Weinstein raised the same complaints there as he does here. The motivation of the particular agents involved was considered in conjunction with both the alleged disclosures and issuance of multiple summonses, 646 F.2d at 1376 & n. 5, and the finding of good faith was based on much of the same evidence presented here. Therefore, the claims for unlawful investigation and unlawful disclosure are barred by collateral estoppel.

### B. Immunity

In addition to finding that the claim of unlawful tax investigation is barred by collateral estoppel, the court also finds that agents Utaski and Jackson are immune from liability for their participation in the investigation.[4] The parties agree that Utaski and Jackson were not responsible for the decision to initiate the investigation, but only for carrying it out.

Although officials responsible for initiating proceedings such as the tax investigation involved here may be entitled to absolute immunity, *Stankevitz v. IRS*, 640 F.2d 205, 206 (9th Cir.1981), persons carrying out the investigation are entitled to only qualified immunity. The record indicates Utaski and Jackson were at all times acting within the scope of their authority and are immune from liability in accordance with *Harlow v. Fitzgerald*, —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

### C. Disclosure of Information

Weinstein objects to two allegedly unlawful disclosures; one relating to information obtained in an interview with Caramucci on the date of his arrest, and one occurring as a result of an ex parte court

---

4. In their initial papers defendants appeared to argue that all three agents were immune. Their reply brief, however, makes it clear that only Utaski and Jackson are seeking immunity.

order obtained by Mueller. The court has already found that the claims for unlawful disclosure are barred by collateral estoppel. In addition, the claim for disclosure pursuant to court order is barred for the reasons set forth below.

Information regarding Weinstein's tax returns were released to Mueller pursuant to an ex parte court order issued in January 1979 under Internal Revenue Code section 6103(i)(1). It is not entirely clear from Weinstein's papers whether the allegations relating to the ex parte order are against the IRS agents for releasing the information or Mueller for seeking it. The defendants have treated it as a claim against the IRS defendants. Weinstein has not objected to this, so the court will adopt that stance. Weinstein objects to the release of the information because it was pursuant to a "secret" order.

Section 6103(i)(1) of the Internal Revenue Code provides for the disclosure of taxpayer returns and information upon the granting of an ex parte order by a United States district court judge. Only certain persons are authorized to seek such an order and obtain the information. The order can be granted only if certain findings are made by the district judge.

Weinstein's objection that the order was obtained in secret is without merit because the statute specifically provides for ex parte orders. Furthermore, there are no irregularities in the order itself or the manner in which it was obtained. The order makes it clear that the application was made by an appropriate person. The district court judge made all necessary findings and specified the information to be disclosed. In particular, defendant Mueller was explicitly found to be entitled to the information. Therefore, Weinstein may not object to the release of the information to Mueller nor to his receipt of it.[5]

## VI. CONSPIRACY

All defendants are named in plaintiffs' conspiracy claim. Because the court has determined that there are no alleged acts for the defendants may be held liable, summary judgment on the conspiracy claim is appropriate.

## VII. SUPPLEMENTAL COMPLAINT

Plaintiffs have stipulated that the defendants' motions may be applied to the supplemental complaint. The supplemental complaint is for the most part vague and conclusory. The chief allegations relate to conduct of certain persons in relation to this action. Because the claims of this action are dismissed by this order, dismissal of the supplemental complaint is also warranted.

## VIII. CONCLUSION

In accordance with the foregoing, it is hereby ordered that defendants' motions for summary judgment are granted.

---

**5.** If Weinstein's claims were read to be against Mueller the result would not be different.

Seeking the order is a prosecutorial act and therefore covered by prosecutorial immunity.