Edgar **MARTINEZ** and **Ruth Martinez** his wife, Appellants,

v.

**E. J. KORVETTE, INC.**

No. 72–1101.

United States Court of Appeals, Third Circuit.

Argued Feb. 9, 1973.

Decided May 10, 1973.

S. Khan Spiegel, Arthur M. Dolin, Larner & Dolin, Philadelphia, Pa., for appellants.

Robert St. Leger Goggin, Marshall, Dennehey & Warner, Philadelphia, Pa., for appellee.

Before McLAUGHLIN, GIBBONS, and WEIS,* Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this diversity action for malicious prosecution, the court below granted the defense motion for a directed verdict at the conclusion of the plaintiff's testimony. A motion for a new trial was later denied and a Memorandum Order filed. (335 F.Supp. 886, E.D.Pa.1971).

On October 24, 1969 plaintiff, Ruth Martinez, accompanied by her husband and brother-in-law went to one of the Korvette stores in the suburban Philadelphia area, planning to buy a new coat. Her testimony was that before trying on any of the new coats she took off her old trench coat and laid it on top of the display rack. After some time, Mrs. Martinez decided on a purchase but was then unable to find the old trench coat. She strolled to another portion of the store to look at other items of clothing, went to a check out counter in that area, and advised the clerk that, since the trench coat had disappeared, plaintiff intended to wear the new one home. Mrs. Martinez claimed that the new coat was purchased by the use of a credit card, and that she was given a sales slip and a cash register receipt.

After the plaintiff walked out of the store she was accosted by a female security officer who asked her about the coat. The two women then went back inside the building where Mrs. Martinez displayed the sales receipt. However, when she and the security officer went to see the cashier who had handled the particular transaction, she could not be found.

The plaintiff then was taken to the security office in the store where she was shown her old trench coat and was told by the security people that it had been found on a hanger on the rack.

After refusing to sign a document which the plaintiff described as one releasing Korvette, the parties proceeded to a police station where a hearing was held before a justice of the peace.

The evidence about what transpired at the magistrate's office is extremely brief. Mrs. Martinez testified there, as did the female security officer, a finding of guilt was made, and the defendant sentenced to pay a fine.

Later, an appeal was taken to the Court of Common Pleas of Montgomery County. No one from the defendant's store appeared at the time set for the trial and the case was dismissed.

There was no testimony in the district court as to what evidence was introduced

* At the time of argument Judge Weis was a District Judge, sitting by designation.

by the parties at the magistrate's hearing or anything tending to show that the guilty finding was returned as the result of fraud or corruption. The trial judge, therefore, was confronted with positive evidence of a guilty finding against the plaintiff by the justice of the peace as well as testimony by Mrs. Martinez which would, if believed, establish her innocence of the crime in fact.

■ The Pennsylvania courts have historically taken a grudging view toward recovery in suits for malicious prosecution, and have imposed a heavy burden which must be met before a case may be submitted to a jury. The plaintiff has the burden of proving lack of probable cause and despite the difficulty of establishing a negative, the requirement is rigidly enforced. In Miller v. Pennsylvania Railroad, 371 Pa. 308, 89 A.2d 809, 812 (1952), the court said:

"Plaintiff has produced no affirmative evidence that defendant lacked probable cause. Plaintiff does not make out a *prima facie* case simply by proving his arrest on a criminal charge and his acquittal."

In Byers v. Ward, 368 Pa. 416, 84 A.2d 307, 309 (1951), it was said:

"Want of probable cause is an indispensable element. [citation]. And such want is in no sense dependent upon the guilt or innocence of the accused. Probable cause does not depend on the state of the case in point of fact but upon the honest and reasonable belief of the party prosecuting. * * *

"The question of want of probable cause is exclusively for the court. Where there is no conflict in the testimony, the court has no need for a finding of a jury."

*See, also,* Psinakis v. Psinakis, 221 F. 2d 418 (3rd Cir. 1955).

The Restatement of Torts, § 667, holds that, absent evidence of fraud, perjury or corruption in procurement, the conviction of the accused by a magistrate, even though later reversed by an appellate tribunal, conclusively establishes the existence of probable cause. While there is some question that Pennsylvania would consider such evidence to be conclusive, *see* MacDonald v. Schroeder, 214 Pa. 411, 63 A. 1024 (1906), it is, at the least, strong *prima facie* evidence of probable cause.

The remaining relevant parts of the plaintiff's testimony established that the security officer was dealing with a woman who had worn a new coat out of the store, who claimed that a sales receipt which she displayed proved payment for the coat but who was unable to corroborate her version when given the opportunity to locate and identify the cashier allegedly involved. This, coupled with the fact that the plaintiff's coat had been found in or on the rack where the new garments were hung, would be evidence tending to show the existence of probable cause rather than lack of it.

While we are required in the present posture of the case to consider the evidence in the light most favorable to the plaintiff, and thus to accept Mrs. Martinez' statement that she had paid for the coat, no such obligation was imposed upon the security officer at the time the event occurred. The fact that the plaintiff protested her innocence then does not establish knowledge of lack of her guilt on the part of the security personnel.

■ In the absence of the conviction, obviously the evidence of probable cause is not overwhelming, but the burden was not on the defendant to establish that factor, but rather on the plaintiff to negative it. When the unimpeached fact of conviction is weighed along with all of the plaintiff's other testimony, it is clear that she has failed to meet her burden of showing lack of probable cause.

When arguing the motion for dismissal, plaintiff's counsel took the position that, having established that Mrs. Martinez was not guilty but had been arrested, he had made out a *prima facie* case. The Pennsylvania cases cited

above make it clear that proof of the fact of innocence does not establish lack of probable cause and that in the absence of other proof the plaintiff's case must fall.

Pennsylvania does impose more stringent requirements on plaintiffs in cases of malicious prosecution than in other tort areas. This is a matter of policy well within the realm of authority inherent in the state and must be respected by federal courts in a diversity action.

For a more complete review of the applicable law in a case stronger for the plaintiff than the one at bar, *see* Thomas v. Korvette, 476 F.2d 471 (3rd Cir. 1973).

The action of the trial judge will be affirmed.

GIBBONS, Circuit Judge (dissenting).

This is an appeal from the entry of a directed verdict in favor of defendant at the end of the plaintiffs' case. Rule 50, Fed.R.Civ.P. The case is a diversity action for malicious prosecution, to which Pennsylvania law is applicable. It presents, however, an issue of the respective roles of judge and jury in the federal courts, as to which, even in a diversity case, state law is not entirely dispositive. The question whether there was any evidence from which the jury could have inferred a lack of probable cause is one as to which federal standards control. *See* Part II of Judge Rosenn's concurring opinion in Thomas v. E. J. Korvette, Inc., 476 F.2d 471 (3d Cir. 1973). As Judge Rosenn points out, in an action for malicious prosecution, if the facts bearing on probable cause are in dispute, the judge should instruct the jury to find the facts by special interrogatories, and based on these facts, make a ruling as to whether there was probable cause.

At the end of the plaintiffs' case the record contained evidence that Mrs. Mar-

tinez had been convicted before the justice of the peace. This conviction, though reversed when the case was retried in the Court of Common Pleas, is under Pennsylvania law prima facie proof that the charging party had probable cause. But it is no more than prima facie proof; evidence of probable cause.

"It is everywhere held that the actions of each of these judicial bodies [justices of the peace and grand juries] are affirmative evidence of probable cause." Miller v. Pennsylvania R. R., 371 Pa. 308, 317, 89 A.2d 809, 813 (1952).

The action of a grand jury is in Pennsylvania entitled to the same evidentiary value on the issue of probable cause as is the finding of a justice of the peace. *Id.* That neither is conclusive is established by Judge Jones' opinion for this court in Hornin v. Montgomery Ward & Co., 120 F.2d 500 (3d Cir. 1941). In that case the arrested party was held for the grand jury and indicted. He was acquitted at trial. This court affirmed a jury verdict against the employer of the charging party. It found sufficient evidence of lack of probable cause in the circumstances surrounding the plaintiff's arrest, despite the grand jury indictment.[1] Judge Jones, no stranger to the law of Pennsylvania, wrote:

"As late as Altman v. Standard Refrigerator Co., Inc., supra, 315 Pa. [465] page 480, 173 A. [411] page 417, the Supreme Court of Pennsylvania quoted with approval its earlier definition of probable cause as stated in McClafferty v. Philp, 151 Pa. 86, 24 A. 1042, where it was said that ' "Probable cause" is generally defined to be a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man (in the same situation) in believing the party is guilty of the offense.' It was, therefore, the duty of the court below, as it is this court's duty on appeal, armed with the above test and cognizant of the facts which the jury

---

1. *See also* Byers v. Ward, 368 Pa. 416, 34 A.2d 307 (1951).

could and presumably did find, to determine whether the conclusion of a want of probable cause could be found by the jury." 120 F.2d at 503.

Judge Jones then reviewed the evidence, not dissimilar to that in this case, and concluded:

"The evidence not only justifies a finding that Stark, by the exercise of ordinary prudence, should have known that he did not have probable cause for proceeding against Hornin, but it further indicates that Stark was actually aware of the want of probable cause." 120 F.2d at 503.

As Judge Weis' opinion points out, the circumstances under which Mrs. Martinez left the store were sufficient to arouse in an ordinarily prudent person the suspicion that she had hung her old coat on the rack, put on a new coat, and left the store without paying for it. At this point Mrs. Martinez was taken to the security office. But her testimony is that she produced a register receipt for the coat:

"I showed them the receipt and then he said to me, 'Well let me have the coat for a minute.' I took off my coat and he took the receipt." (Tr. 28).

The security officer took the coat and receipt upstairs apparently to check with the register clerk.

"When he went up with the coat and the receipt—he took it upstairs. That's when the others came in. He was gone about ten minutes, and when he came back down he had this paper for me to sign.

Q What was that paper as far as you know?

A Well, I didn't read much of it. It said something about releasing Korvette's.

He started putting my name down and my address, and then I told him I would not answer any more questions and I wasn't going to sign.

He said, 'It's just something to say we weren't harassing you.' It was something like that. I said, 'I will not sign it.'

Q All right. What happened after that?

A Then he said, 'Well if you don't answer the questions here, you will answer them in the police station.' That's when he called the police."

(Tr. 29–30).

Mr. Martinez testified that the coat had been paid for by use of a Unicard credit card and a register receipt was issued. (Tr. 44–45).

Assuming the testimony of Mr. and Mrs. Martinez to be truthful, as in this posture of the case we must, the jury could have found that prior to the decision to charge Mrs. Martinez the security officer was aware that she had a register receipt which she claimed was for the coat, that the receipt was in fact for the coat, that he had taken the receipt and the coat and had verified that in fact the receipt was genuine, that he had thereupon attempted to coerce Mrs. Martinez into executing a paper releasing Korvette's from any charge of harassment, and that only when she refused to sign the release did he decide to charge her despite his knowledge that the receipt was genuine. If the jury so found, I submit, the court would have been required to hold that the plaintiffs had established a lack of probable cause, judged against the standard of the ordinary prudent man similarly situated.

I am as aware as the next man of the enormous problems which retailers face in dealing with shoplifters. Possibly such problems would justify the Commonwealth of Pennsylvania in abolishing the cause of action for malicious prosecution. They do not, however, justify us in blurring the historic line between the functions of judge and jury in the federal courts, for that line is predicated upon federal constitutional

considerations. So long as we must entertain diversity cases we must try them by appropriate federal standards. I would reverse and remand for a new trial.