**John R. CURRAN**

v.

**Carl M. DURAL.**

Civ. A. No. 80–515.

United States District Court,
E. D. Pennsylvania.

March 30, 1981.

Edward F. Kopko, Pottsville, Pa., for plaintiff.

Mark N. Cohen, Deputy Atty. Gen., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

The facts of this case taken in the light most favorable to plaintiff are as follows. At approximately 2:45 in the morning of August 2, 1979, an accident occurred in the vicinity of plaintiff's parents' home.[1] A car crashed through a utility pole and damaged the lawn and shrubbery of the Frizzel home nearby. Awakened by the sound of the collision, Mr. Frizzel and another neighbor observed a car travelling away from the area of the accident pull into the driveway

---

1. Many of the specific facts stated here relating to events which occurred before the defendant confronted the plaintiff's father are taken from the affidavit of the defendant. The only affidavit offered by the plaintiff was that of plaintiff's father and it does not dispute the defendant's recitation of the events before they met on August 2, 1979. Accordingly, on a motion for summary judgment in the absence of contradiction, these facts will be taken as undisputed.

of plaintiff's parents. Both reported that they did not observe anyone fleeing from the direction of the Curran home.

Responding to the utility's and Mr. Frizzel's reports of property damage, defendant, a Pennsylvania state trooper, arrived at the accident scene at approximately 8:30. He interviewed Mrs. Frizzel and collected fragments at the scene which he concluded had been shorn from the vehicle that caused the damage.

At 7:25 on the morning of August 2, 1979, the plaintiff's father had reported that his car had been damaged by some unknown person. Trooper McBreen of the Pennsylvania state police was assigned to investigate that report. At 9:00 the same morning, the defendant contacted Trooper McBreen who told him that a neighbor, a Mr. Mack, reported that at about the time of the accident he saw a car come from the direction of the accident scene and turn into the Curran driveway. Trooper Dural was already aware that Mr. Frizzel had observed the same thing from his conversation with Mrs. Frizzel.

At about 9:10 Troopers Dural and McBreen went to the Curran home. Defendant compared the fragments that he had gathered at the accident scene to the damage done to the Curran car. The defendant concluded that the Curran car was the same car that had caused the damage reported by the Frizzels.

Apparently Trooper McBreen was already engaged in conversation with the plaintiff's father when the defendant approached. Plaintiff's father stated that his son had used the car the night before but that he was home by 11:20. According to the plaintiff's father, the defendant stated that he believed that the son had been driving the car and intended to arrest him. The defendant admitted that no eyewitness had placed the plaintiff behind the wheel of the car. Since the defendant admitted that

he had not examined the car for evidence that might reveal who the driver was, plaintiff's father offered to preserve the car until tests for evidence of this type might be conducted. The defendant refused this offer as unnecessary. The defendant did not arrest the plaintiff. Sometime later, he did endorse two traffic citations against the plaintiff which in turn led to the issuance of a summons to the plaintiff to appear before a district justice and defend a "summary" criminal charge. The plaintiff did not appear but was represented by counsel. After a hearing, the charges, according to the plaintiff, "were dismissed by [the] District Justice ... acquitting the plaintiff of all charges." Complaint ¶ 10. The plaintiff has not alleged that the basis of the dismissal by the magistrate was a lack of probable cause.

The plaintiff's father's affidavit also contends that following the accident the defendant attempted to speak with the plaintiff even though he had been told that the plaintiff would only be available if arrangements were made through the plaintiff's attorney. Plaintiff's father also alleges that the defendant said he had decided that the plaintiff was involved in the accident based upon his "feelings." Plaintiff's father states that the defendant's attitude was unprofessional and antagonistic.

The plaintiff's complaint contains counts based upon § 1983 of Title 42 of the United States Code, malicious prosecution, and intentional infliction of mental distress.[2] Plaintiff's § 1983 count, alleging that he was deprived of constitutionally protected rights, is many faceted. First, the plaintiff alleges that he was arrested without probable cause. Second, the plaintiff alleges that because in response to the summons he was forced to retain counsel, the cost of his attorney amounts to a seizure of his property without due process. Thirdly, the plaintiff apparently contends

---

**2.** The plaintiff has not argued abuse of process. See Jennings v. Shuman, 567 F.2d 1213, 1218 (3d Cir. 1977). Abuse of process is alleged when the plaintiff contends that after process was issued against him the defendant attempt-

ed to subvert it to an illegitimate purpose. Id. at 1218–19. In such a case the initial validity of the process is not important and so the presence of probable cause is irrelevant. Id.

that the issuance of the summons without probable cause violated his rights of procedural due process.

For reasons stated below, I conclude that the defendant had probable cause to believe that the plaintiff was the driver. Based upon this conclusion, I will grant the defendant's motion.

■ Beginning with plaintiff's claim that there was a seizure of his property, I conclude that being forced to incur the cost of legal counsel to defend an action the initiation of which does not itself violate a constitutional right is not a seizure of property within the meaning of the fourth and fourteenth amendments to the United States Constitution. Since I conclude that there was no arrest and there was probable cause, the initiation of an action against the plaintiff did not violate his constitutional rights.

Turning to the plaintiff's claim based upon his fourth amendment right to be free from seizures of the person, the Supreme Court's observation in *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), must be borne in mind: "[t]he first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.' If there has been no such deprivation, the state of mind of the defendant is wholly immaterial." *Id.* at 140, 99 S.Ct. at 2692.

■ The plaintiff contends that the summons compelling him to appear before the magistrate is akin to a seizure of his person. The error in this argument is fundamental. An arrest, by common definition, involves the taking of the person into custody. *See Commonwealth v. Brown*, 230 Pa.Super. 214, 326 A.2d 906 (1974). It is this consequence, the seizure of the person, which causes the constitutional protections of the fourth amendment to attach. The seizure may be actual or constructive. For example, the Fifth Circuit has held that the fourth amendment is implicated "whenever a police officer accosts an individual and restrains his freedom to walk away." *U. S. v. Brunson*, 549 F.2d 348, 357 (5th Cir.), *cert. denied*, 434 U.S. 842, 98 S.Ct. 140, 54

L.Ed.2d 107 (1977). However, there must be some taking of control or restraint of liberty. A procedure which does not have these consequences does not implicate the fourth amendment rights upon which plaintiff relies. In this case there was no seizure of the plaintiff. There was no confrontation between plaintiff and defendant in which defendant could have restrained plaintiff's freedom. The lack of an arrest justifies a grant of summary judgment against this part of plaintiff's § 1983 claim. However, plaintiff also alleges that legal process was issued against him without probable cause denying him procedural due process. Plaintiff argues that the process which was due him was not to be charged without probable cause. With respect to the definition of probable cause, the Supreme Court has stated:

'The substance of all the definitions' of probable cause 'is reasonable ground for belief of guilt. And this 'means less than evidence which would justify condemnation' or conviction, as Marshall, C. J., said for the Court more than a century ago in *Locke v. United States*, 7 Cranch 339, 348 [3 L.Ed. 364]. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed.

*Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949) (citations and footnotes omitted).

■ The plaintiff also alleges that the defendant's actions amount to malicious prosecution. The elements of a claim for malicious prosecution are (1) a proceeding initiated without probable cause, (2) with a primary purpose other than that of bringing the accused to justice, and (3) termination of the proceedings in favor of the accused. *See Thomas v. E. J. Korvette, Inc.*, 476 F.2d 471, 474 (3d Cir. 1973). Probable

cause had been defined in malicious prosecution actions as: "reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense." *Id.* The Pennsylvania courts rigidly enforce the requirement that the plaintiff prove a lack of probable cause. *See Martinez v. E. J. Korvette, Inc.,* 477 F.2d 1014, 1016 (3d Cir. 1973). In order to succeed on either his due process claim or his malicious prosecution claim, the plaintiff must be able to prove, *inter alia,* that the defendant lacked probable cause. Since probable cause is a question for the court, I may consider on a summary judgment motion whether it existed in this case. While I am required in the present posture of the case to accept all the facts as stated by the plaintiff, to resolve disputes about the facts in his favor, and to draw all inferences to his benefit, at the time the events transpired the defendant was under no similar obligation. *See id.; cf. Thomas v. E. J. Korvette, Inc.,* 476 F.2d at 475, 478–79. The defendant was entitled to give greater credence to the Frizzel's reports and those of the completely disinterested neighbor Mack. He was also entitled to disbelieve the statements made by plaintiff's father which exculpated the plaintiff. The undisputed facts establish that before he issued the traffic citations defendant had statements of two neighbors that moments after the accident a car was seen coming from the direction of the accident and turning into the Curran driveway. The neighbors did not observe anyone fleeing the Curran property. The plaintiff's father admitted that his son had the car out the evening before but insisted that the plaintiff had returned before 11:30. Based upon these undisputed facts, I conclude as a matter of law that the defendant had probable cause to issue traffic citations to the plaintiff. It follows therefrom that the plaintiff cannot establish all the elements necessary to recover on his claim of malicious prosecution and therefore, summary judgment will be granted on those counts. Similarly, plaintiff was not denied procedural due process since the traffic citations

which led to the issuance of the summons were based on probable cause.

■ The plaintiff has also alleged that the defendant intentionally inflicted mental distress upon him. There are four elements to a claim for intentional infliction of emotional distress:

(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe. Although the Pennsylvania Supreme Court has not as yet specifically adopted in its entirety the Restatement's formulation and comments, Pennsylvania courts have signalled their acceptance of this evolving tort. *Papieves v. Lawrence,* 437 Pa. 373, 263 A.2d 118 (1970); *Forster v. Manchester,* 410 Pa. 192, 189 A.2d 147 (1963); *Jones v. Nissenbaum, Rudolph & Seidner,* 244 Pa.Super. 377, 368 A.3d 770 (1976).

*Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1273–74 (3d Cir. 1979). It is not sufficient that the defendant have acted with intent to distress or even malice, "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 1274, *quoting* Restatement (Second) of Torts, § 46, comment d. The determination of whether conduct is outrageous is divided between the court and the jury. The court must decide in the first instance "whether there is sufficient evidence for reasonable persons to find extreme or outrageous conduct." *Id.*

■ I have concluded above that as a matter of law, applying an objective standard, there was a reasonable basis for believing that the plaintiff was the driver of the car at the time of the accident. The plaintiff has argued that the defendant accused the plaintiff not based upon a reasonable conclusion but rather upon his personal "feelings" about the case. The plaintiff has not argued, however, that the defendant knew that the plaintiff was not the driver

but accused him nonetheless. This is important in this case. There may be some cases in which an arrest or an issuance of a citation with probable cause will constitute conduct that reasonable persons could conclude was outrageous. For instance, where there is probable cause measured objectively but the arresting officer is aware of exculpating evidence.[3] There is no suggestion of such conduct here. On the facts of this case, I conclude that the issuance of citations to the plaintiff which I have concluded were supported by probable cause is not conduct which any reasonable persons could deem outrageous. Accordingly, plaintiff cannot establish all the necessary elements of a claim for intentional infliction of mental distress. I will enter summary judgment on this count as well.

---

**3.** *Cf. Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265 (3d Cir. 1979). In *Chuy,* the jury had found outrageous conduct on the part of a doctor who had told a reporter that the plaintiff was suffering from a fatal disease when in fact he was not. The court held that the evidence supported the verdict because the jury could have concluded that the doctor made the statement knowing that the plaintiff did not have the disease. This, in the court's opinion, would constitute conduct that reasonable persons could consider outrageous. *Id.* at 1274–75.

Another example of outrageous conduct can be found in the case of *Papieves v. Lawrence* cited in the text. That case involved a suit by parents of a boy who was killed when he was struck by a car. The defendant was the motorist who struck the boy. Instead of notifying the police or the boy's parents, the defendant hid the boy's body and later buried it. The Pennsylvania Supreme Court concluded that this was conduct so wanton as to rise to the level of outrageous. *See* 437 Pa. 373 at 379, 263 A.2d 118 at 121.