John DOE, Plaintiff,

v.

Marjorie J. SMITH, Assistant District Attorney, Dutchess County, New York, William V. Grady, District Attorney, Dutchess County, New York, J.J. Chickering, Detective, Dutchess County, New York, The County of Dutchess, New York, Al Smith, Detective, Town of Poughkeepsie, New York, Town of Poughkeepsie, New York, Ruth Cummings, Susan E. Benson and Vassar College, Defendants.

No. 86 Civ. 9222 (GLG).

United States District Court, S.D. New York.

Oct. 3, 1988.

Matays Hughes & Brown, New York City (Rodney A. Brown, of counsel), for plaintiff.

Ian G. MacDonald, Co. Atty., Dutchess County, Poughkeepsie, N.Y. (Keith P. Byron, Sr. Asst. Co. Atty., of counsel), for defendants, Marjorie J. Smith, William V. Grady, J.J. Chickering and County of Dutchess.

Spitz, Spitz & Fedorchak, Poughkeepsie, N.Y. (Andrew L. Spitz, of counsel), for defendants, Town of Poughkeepsie and Detective Alfred Smith.

Semel, Boeckmann, Diamond, Schepp & Yuhas, New York City (Michelle Schuster, of counsel), for defendants, Ruth Cummings, Susan E. Benson and Vassar College.

## OPINION

GOETTEL, District Judge.

Plaintiff, John Doe, commenced an action alleging violations of his common law and constitutional rights to be free from malicious prosecution, 42 U.S.C. § 1983, and abuse of process, which he contends arose out of his prosecution and subsequent acquittal for committing an act of public lewdness, N.Y.Penal Law § 245.00. The case is before the court on the defendants' motion for dismissal, Fed.R.Civ.P. 12(b)(6), or alternatively, for summary judgment, Fed.R.Civ.P. 56, and the plaintiff's motion to compel discovery with respect to certain defendants, Fed.R.Civ.P. 37, for a protective order, Fed.R.Civ.P. 26(c), and for leave to replead, Fed.R.Civ.P. 15, if it becomes appropriate. The defendants also seek attorneys' fees, 42 U.S.C. § 1988, and sanctions, Fed.R.Civ.P. 11.

Because matters outside the pleadings were submitted to and considered by the court, the defendants' motion for dismissal is treated as one for summary judgment. Fed.R.Civ.P. 12(c). The defendants' motion for summary judgment is granted as to the § 1983 claim and the state law claim of malicious prosecution. We decline to retain jurisdiction of the sole remaining claim, a state law claim alleging abuse of process and, consequently, it is dismissed. The defendants' motion for fees, 42 U.S.C. § 1988, is denied, as is their motion for

sanctions, Fed.R.Civ.P. 11. Plaintiff's motion is denied in all respects.

BACKGROUND

On August 5, 1983, between approximately 2:30 pm and 2:45 pm, defendants Ruth Cummings and Susan Benson, employees of Vassar College, stated that they observed a white male exposing himself and masturbating on the grounds of Vassar College. Cummings and Benson reported the incident to the Vassar College Security Office at 2:55 pm which, in turn, reported the occurrence to the Town of Poughkeepsie Police Department. Cummings and Benson initially described the alleged perpetrator as:

White male

40 years of age

About 6 feet tall—160 lbs.

Dark horn rimmed glasses

Dark T shirt and dark pants.

Black hair.

Complaint Report, Exh. E. to Doe Aff'd.

Although the information did not appear in the Complaint Report filed with the Vassar College Security Office, nor in the police report, Benson told the police that the alleged perpetrator had a severely pock-marked face. At plaintiff's trial, Benson also described the alleged perpetrator as being "[s]lender but [with] bulges on his hips". Brown Aff'd at 5. Also at plaintiff's trial and during depositions in support of the instant motions, the alleged perpetrator was described as wearing a light colored shirt, a tie and a hat.[1]

Plaintiff is 6 feet 2½ inches tall, 185 pounds, contends he has worn rimless gold framed eyeglasses since 1970, and as a practicing attorney, wears a white or light shirt and necktie during working hours. Plaintiff, who was 44 years old at the time of the alleged incident, has a clear, smooth-skinned face.

Shortly after Cummings and Benson reported the alleged incident, a suspect who fit the description given to the Vassar Security Office was seen driving away from the area of the incident by a Town of Poughkeepsie police officer. The officer noted the license plate number and traced the driver to his home where he was interviewed. The suspect claimed he had gone to the campus at 2:45 pm to drop off his wife at her workplace. The police officer who interviewed him concluded the suspect did not fit the description given by Cummings and Benson as the "subject is 5'11" and weighs 220 pounds, thus, excluding him from the picture due to his size. The girls gave a description of tall and thin. It was (the police officer's) estimation that he was by no means thin." Police Investigation Report, Exh. F to Doe Aff'd.

A few days after the alleged incident, on August 9, 1983, at approximately 1:00 pm, plaintiff Doe, who was and had been for several years, a member of the Vassar College Summer Tennis Program, went to the reservation desk at the Vassar College tennis courts to reserve a tennis court for that evening. As he was leaving the reservation desk, Doe was seen by Cummings and Benson who suspected him of being the man they had witnessed on August 5, 1983. In order to observe him more closely, Cummings and Benson approached the plaintiff and Cummings asked him for the time. Although Cummings was less sure than Benson, the women reported to Brian Becker, the attendant on duty at the tennis courts, that they thought that the man who had just left the reservation desk was the one they had observed exposing himself a few days earlier. The plaintiff, who was known by name to Becker because he regularly played tennis at the Vassar College tennis courts, was followed back to his office by Cummings and Benson and two companions. The Town of Poughkeepsie Police were notified that there was a possible identification of the alleged perpetrator.

Plaintiff Doe was aware he had been followed after he left the tennis courts and he phoned the desk attendant at the tennis courts to inquire why he had been followed. He was told that Cummings and Benson

1. Varying descriptions of the alleged perpetrator are set forth throughout the instant motion papers. But, there is no indication of exactly when nor to whom the additional and sometimes inconsistent characteristics were provided.

had identified him as the man they had seen exposing himself a few days earlier. Thereafter, Doe telephoned the Town of Poughkeepsie Police, whereupon detective Alfred Smith asked Doe to come to the police station to discuss the recent events, and plaintiff Doe agreed to do so.

Plaintiff arrived at the police station shortly after 5:00 pm and was escorted to detective Smith's desk. Smith advised Doe of his constitutional rights and described the act Cummings and Benson claimed to have witnessed. Beyond a description of the act, Doe was refused additional details about the incident.

On that same day, Susan Benson signed a misdemeanor complaint charging Doe with having committed the act of public lewdness she and Cummings observed. The misdemeanor complaint was supported by affidavits from Brian Becker and Ruth Cummings.

Later that day, Doe spoke with Brian Becker at the tennis courts and obtained sufficient information about the alleged incident to enable him to identify the time and place it had occurred. Doe telephoned detective Smith on August 10, 1983, and told him that on the day in question, August 5, 1983, he was in his law office with a client. Specifically, plaintiff contended he had an appointment in his office with a client, Nicholas Liguori, owner of a delicatessen in Poughkeepsie, which lasted from approximately 2:05 pm to 4:15 pm. He also stated that his aunt and his mother, who was working as his secretary that day, were at his office and they, in addition to Liguori, could be contacted to verify his alibi.

The investigation conducted by the Town of Poughkeepsie Police extended beyond the taking of the statements from the complaining witnesses. The police report indicates that on August 10, 1983, detective Smith spoke with Nicholas Liguori, who confirmed that he was at the office of plaintiff Doe from 2:00 pm until 4:00 pm on August 5, 1983, and that Doe was never absent for longer than five to ten minutes. Brian Becker told the police that when Doe questioned him on August 9, 1983, about the incident, that "[Doe] was not wearing the black rimmed glasses that he had worn earlier, but was wearing gold rimmed glasses.", Police Investigation Report, Exh. F to Doe Aff'd., a statement he later disavowed in his affidavit of July 1987, *id.*, Exh. A. Moreover, detective Smith asked Doe to take a polygraph test which, initially, he said he would take it, but later he refused. The Office of the District Attorney was informed of the alleged event and the possible identification of the suspect. An assistant district attorney, Lou Viglotti, told detective Smith that the District Attorney would seek a court order for a lineup to be viewed by defendants Cummings and Benson, a lineup to include plaintiff Doe. For reasons not specified in the papers before us, the lineup was not conducted. As a result of the investigation by the Town of Poughkeepsie Police, a decision was made to seek a criminal summons.

The misdemeanor complaint was forwarded to Town Justice Paul Sullivan of the Town Justice Court for review and issuance of a criminal summons. Town Justice Sullivan issued the criminal summons and it was forwarded to Doe, who presented himself to the Town of Poughkeepsie Police on August 21, 1983, and was released without bail after being booked.

The plaintiff continued to dispute the testimony of the two eyewitnesses, Cummings and Benson, and to maintain his innocence. Doe's attorney at that time, Paul Goldstein, in an effort to prove the innocence of his client, arranged to have an interview conducted with an investigator from the District Attorney's Office. The purpose of the interview was to submit to a voice stress analysis examination. J.J. Chickering, an investigator from the District Attorney's Office conducted the interview, and concluded that the results of the voice stress analysis indicated that plaintiff "had lied about his actions of August 5, 1983". Chickering Aff'd.

Detective Chickering, at the direction of assistant district attorney, Peter Forman, interviewed the complaining witnesses Cummings and Benson at the site of the alleged incident. Chickering also spoke

with Doe as well as his alibi witnesses, but he did not confer with the Town of Poughkeepsie Police. Chickering testified that his actions, while at the directive of the District Attorney's Office, were not pursuant to any procedures mandated by that Office. Subsequently, all of the evidence relating to the "Doe" case was reviewed by unnamed members of the District Attorney's Office, and the conclusion was reached to prosecute the case. Accordingly, on December 9, 1983, a misdemeanor information was issued and Doe was arraigned on December 21, 1983.

In February 1984, Marjorie J. Smith, who had been hired as an assistant district attorney by the District Attorney in November of 1983, was assigned to handle the Doe case. She reviewed the file and decided to proceed with the prosecution of the case. Just prior to the trial, complaining witnesses Cummings and Benson were interviewed by assistant district attorney Smith. The case was transferred to the Town of East Fishkill, where it was tried nonjury by Marjorie Smith before the Honorable Thomas F. Wood, Town Justice, on March 13, 1985.

During his case in chief, Doe attempted to introduce the testimony of a polygraph examiner named Kaufman, testimony which he contended demonstrates his innocence. Assistant district attorney Smith objected and, consequently, Doe's attorney stipulated that in exchange for the admission of Kaufman's testimony, Doe would submit to a polygraph test to be administered by an expert selected by the People. On April 12, 1985, plaintiff appeared for the polygraph examination to be administered by an investigator from the New York State Police. However, the examination was not conducted because Doe refused to answer the control questions. On May 29, 1985, a year and nine months after the alleged incident, assistant district attorney Smith moved to strike the testimony of Kaufman and the motion was granted.

Doe was acquitted by decision on September 5, 1985, in which Justice Wood stated:

The People's case is based primarily upon the testimony of the two eye witnesses whose testimony contained not only the elements of the crime but also the identification of the perpetrator. The first of these two witnesses described the man she saw as having severe facial scarring that resulted from acne and he was wearing black framed glasses. After a few moments of thought she pointed out the defendant as the man. The second of the People's main witnesses indicated that she knew it was the defendant only when she saw the defendant the next day and only after being prodded by the other witness.

The defendant took the stand and denied having committed this act. The defense also put on the stand a client of the defendant who testified that at the time in question the defendant was in the defendant's office with his client.

*Peo. v. Doe,* slip op. (Justice Crt., Twn. of East Fishkill, Sept. 5, 1985), Exh. D. to Doe Aff'd.

After his acquittal, plaintiff filed a timely notice of claim with the Town of Poughkeepsie and the County of Dutchess. Subsequently, on December 2, 1986, Doe commenced the instant action in which he alleges the defendants violated various constitutional and common law rights as a result of his prosecution for and acquittal of public lewdness. The amended complaint names the following defendants:

A. The Dutchess defendants, which include

—County of Dutchess ("County"), a municipal corporation organized under the laws of and located in the State of New York;

—William V. Grady ("Grady"), the District Attorney of the County of Dutchess;

—Marjorie J. Smith ("M. Smith"), assistant district attorney of the County of Dutchess;

—J.J. Chickering ("Chickering"), a detective for the District Attorney of the County of Dutchess.

Defendants M. Smith, Grady, and Chickering, are sued individually and in their official capacities.

B. The Poughkeepsie defendants, which include

—Town of Poughkeepsie ("Town"), a municipal corporation organized under the laws of and located in New York;

—Alfred Smith ("A. Smith"), a detective for the Town of Poughkeepsie Police Department, sued in his individual and official capacity.

C. The Vassar defendants, which include

—Vassar College ("College"), an educational corporation existing under the laws of the State of New York;

—Ruth Cummings ("Cummings"), an employee of Vassar College during the relevant time period;

—Susan Benson ("Benson"), an employee of Vassar College during the relevant time period.

Initially, the plaintiff interposed seven counts but, subsequently, in his papers submitted in opposition to the instant motion, including the affidavit of Rodney Brown, he withdrew all but 3 counts. Accordingly, the remaining allegations are that all of the defendants maliciously prosecuted him in violation of his federal constitutional rights, secured by the 14th Amendment, 42 U.S.C. § 1983, and violated his common law right to be free from abuse of process. He also alleges that Dutchess County and the Town of Poughkeepsie maliciously prosecuted him in violation of state common law.

DISCUSSION

Plaintiff Doe alleges that he was maliciously prosecuted because despite the fact he steadfastly maintained his innocence, did not fit the description given by Cummings and Benson, and had alibi witnesses, he was, nevertheless, prosecuted. Doe "believes" Cummings, Benson and detective Smith "knew plaintiff had not committed the lewd act," Amended Cmplnt. ¶ 59, but swore out a complaint and sought a criminal summons nevertheless at the urging of Vassar College. The Dutchess defendants violated Doe's rights in that they "all worked to prosecute plaintiff, and they also suppressed and concealed from Judge Sullivan, and from plaintiff right up to the day of trial, the true description of the alleged perpetrator as well as the information about the 'heavy-hipped' suspect", Amended Cmplnt ¶ 53. Additionally, defendant Chickering administered a voice stress test to plaintiff and "maliciously used evidence, gathered during the test, including the test results of failure, against plaintiff for the prosecution", Amended Cmplnt ¶ 54.

*42 U.S.C. § 1983 Predicated Upon Malicious Prosecution.*

The requisite elements of a § 1983 claim are that the defendants, acting under color of state law but not cloaked with immunity, have deprived one who is a person within the meaning of the Civil Rights Act, of a right secured by the Constitution or laws of the United States. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Adickes v. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); *Fine v. City of New York,* 529 F.2d 70, 73 (2d Cir.1975).

■■■ In this Circuit, the tort of malicious prosecution is sufficient to make out a constitutional deprivation under § 1983, *White v. Frank,* 855 F.2d 956, 961, n. 5 (2d Cir.1988) (there is no question but that malicious prosecution can be the basis for imposing liability under § 1983); *Raysor v. Port Authority of New York and New Jersey,* 768 F.2d 34 (2d Cir.1985), *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986); *Conway v. Village of Mount Kisco,* 750 F.2d 205 (2d Cir.1984), and, "the same four elements must be proved for both the tort of malicious prosecution and the § 1983 claim." *Raysor,* 768 F.2d at 39. Specifically, under New York law the elements of a malicious prosecution claim are:

1. The defendants commenced or maintained a criminal proceeding against the plaintiff;

2. the proceeding terminated in the plaintiff's favor;

3. there was no probable cause for the criminal proceeding; and,

4. the criminal proceeding was instituted by reason of actual malice.

*Conway,* 750 F.2d at 214.

A. The Dutchess Defendants.

The Dutchess defendants argue that district attorneys are entitled to absolute immunity for commencing and maintaining a prosecution against a defendant, *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and, that absolute immunity extends to defendant Chickering whose activities were not investigatory but, rather, were conducted at the behest of the District Attorney's Office in order to obtain information necessary to make the decision to prosecute, *Taylor v. Kavanagh,* 640 F.2d 450 (2d Cir.1981); *Forsyth v. Kleindienst,* 599 F.2d 1203 (3d Cir.1979), *cert. denied sub. nom. Mitchell v. Forsyth,* 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981). Further, they argue that Marjorie Smith was not hired by the District Attorney until November 1983 and was not assigned the case until February 1984; thus, she could not have directed any alleged "investigatory" activities for which she would have only qualified immunity. Similarly, Grady did not assume the Office of District Attorney until January 1, 1984.

These defendants also maintain that Dutchess County can be held liable for a § 1983 violation only if it the wrongful action was taken pursuant to policies, regulations or decisions officially adopted by the County, and not on the basis of respondeat superior, *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

1. The County of Dutchess.

■ The Second Circuit Court of Appeals has recently and unequivocally held that "prosecutorial acts may not 'fairly be said to represent official policy' of the County," because "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county". *Baez v. Hennessy,* 853 F.2d 73 (2d Cir.1988) (citations omitted). Because New York

State continues to play a prominent regulatory role in the law enforcement activities of district attorneys, no county policy can require district attorneys to depart from the policy of the state, nor does the county have a right to establish policy concerning how a district attorney should prosecute violations of state criminal laws. *Id.* "Indeed, it would be a violation of a district attorney's ethical obligations as counsel for the State in a criminal proceeding to permit himself to be influenced in the performance of his duties by so-called policies of a county." *Id.* at 77.

Therefore, as a matter of law, the County of Dutchess cannot be held liable for the prosecutorial acts of the District Attorney or its employees. Because we conclude *infra* that the allegedly wrongful actions by those associated with the Office of the District Attorney constitute prosecutorial, not investigatory, actions, we need not reach the question of whether the County might be held liable under the doctrine of *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), for any investigatory actions of the Office of the District Attorney. Accordingly, the cause of action alleging a § 1983 violation as well as the state law claim of malicious prosecution are dismissed as to defendant County of Dutchess.

2. District Attorney William V. Grady.

■ Prosecutors enjoy absolute immunity for any act prosecutorial in nature, including those in support of the preparation of the case. *Imbler,* 424 U.S. at 409, 96 S.Ct. at 984. This immunity does not extend to any investigatory acts which are afforded only qualified immunity. *Taylor v. Kavanagh,* 640 F.2d 450 (2d Cir.1981); *Gray v. Bell,* 542 F.Supp. 927 (D.D.C.1982) (absolute immunity extends to challenged activities that took place after the investigation had matured to point of preparing a case against a particular suspect rather than seeking a suspect against whom to prepare a case), *aff'd,* 712 F.2d 490 (D.C. Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984).

■ District Attorney Grady was the Chief Assistant District Attorney of Dutchess County at the time of the incident witnessed by Cummings and Benson. He was installed as the District Attorney of Dutchess County in January 1984, after the misdemeanor information was issued against Doe. Other than conclusory allegations that Grady participated in some type of conspiracy against plaintiff, it is difficult to find the elements of a cause of action alleged with respect to Grady. In paragraph 50 of the amended complaint, he is described as having successfully opposed an application by Doe for a probable cause hearing before a town justice.[2] In paragraph 57, the plaintiff asserts that Grady offered him a plea bargain, which he refused.[3]

These actions are clearly attendant to a prosecutorial function and are entitled to absolute immunity. *Taylor,* 640 F.2d at 450 (prosecutorial function includes plea bargaining); *Dellums v. Powell,* 660 F.2d 802 (D.C.Cir.1981) (prosecutor is absolutely immune from civil suit based on his initiating a prosecution); *Forsyth v. Kleindienst,* 599 F.2d at 1203 (decision to initiate a prosecution includes limited right to gather information necessary to make that decision); *U.S. v. Shakur,* 560 F.Supp. 366 (S.D.N.Y. 1983) (decision whether and when to prosecute is entirely in prosecutor's discretion). Doe's displeasure with respect to the actions performed by District Attorney Grady is insufficient to sustain a § 1983 cause of action. Accordingly, the complaint, in so far as it alleges a § 1983 violation is dismissed as to defendant Grady.

3. Assistant District Attorney Marjorie Smith.

■ Assistant district attorney Smith's first association with the prosecution of Doe began in February 1984, after the misdemeanor information was issued. *Gray,* 542 F.Supp. at 927. Her involvement in the state's prosecution of Doe consisted of reviewing the case file and interviewing Cummings and Benson in preparation for trial, and trying the case for the People. *Taylor,* 640 F.2d at 450 (even solicitation and subornation of perjured testimony or withholding of evidence does not create liability); *Weinstein v. Mueller,* 563 F.Supp. 923 (N.D.Cal.1982) (suppressing exculpatory evidence, interviewing witnesses, and actively encouraging and threatening witnesses in order to obtain perjured testimony are within scope of prosecutorial immunity). Plaintiff's attempts to cast these actions as investigatory is meritless. *Imbler,* 424 U.S. at 431, 96 S.Ct. at 995; *Taylor,* 640 F.2d at 450; *Dellums,* 660 F.2d at 802; *Forsyth,* 599 F.2d at 1203; *Shakur,* 560 F.Supp. at 366; *Gray,* 542 F.Supp. at 927. Accordingly, assistant district attorney Smith is accorded absolute immunity for these prosecutorial acts and the complaint is dismissed as to defendant Marjorie Smith with respect to the § 1983 claim.

4. Detective J.J. Chickering.

■ A nonjudicial officer, such as an investigator for the district attorney's office, who undertakes ministerial actions intimately related to the judicial process at the express direction and control of the prosecutor, enjoys absolute immunity. *Joseph v. Patterson,* 795 F.2d 549, 560 (6th Cir.1986), *cert. denied sub. nom. Patterson v. Joseph,* 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987). Only if the investigator initiates actions on his own, or carries out the investigatory functions of the prosecutor, does he lose the absolute immunity and is entitled only to qualified immunity. *Id.* The qualified immunity evaporates only if the challenged actions are deemed to be clearly violative of the complainant's rights. *Walsh v. Franco,* 849 F.2d 66 (2d Cir.1988).

■ Chickering's actions with respect to the eventual prosecution of Doe consist-

---

**2.** N.Y.Crim.Pro.Law § 120.20 permits, it does not mandate, a hearing prior to the issuance of a criminal summons to determine whether probable cause exists to believe a crime has been committed and that a particular suspect has committed that crime.

**3.** In her affidavit, assistant district attorney Smith states that Doe was not given a plea bargain, rather he was extended an offer of an adjournment in contemplation of dismissal on the condition he seek counseling.

ed of performing, at Doe's request, a voice stress analysis of plaintiff, which Chickering concluded demonstrated plaintiff was being untruthful.[4] Further, Chickering interviewed the two alibi witnesses, Doe, and the complaining witnesses at the site of the alleged incident. We note the evidence against Doe cannot be fairly characterized as conclusive—Benson and Cummings identified him as the perpetrator, although their identification was somewhat hesitant and inconsistent; Doe and his alibi witnesses contended he was at the office during the time of the incident and, therefore, he could not have been the perpetrator; but, the voice stress test indicated plaintiff was not being truthful with respect to his denial of involvement in the incident.

In order to be stripped of the absolute immunity defense, detective Chickering must have either carried out these activities as part of the prosecutor's investigation, or have initiated investigatory activities without direction from others, but solely at his own initiative. The court finds that the facts alleged with respect to detective Chickering are insufficient to destroy the defense of absolute immunity and for that reason alone the complaint must be dismissed as to him.

The District Attorney's Office first learned of the alleged incident only *after* a suspect had been identified. Thus, any "investigatory" actions undertaken on behalf of the prosecution were not to identify a suspect against whom to prepare a case, but to prepare the prosecution against a known defendant. *Gray*, 542 F.Supp. at 927. Chickering was instructed by assistant district attorney Forman to interview the complaining and alibi witnesses, as well as to conduct a voice stress test, which plaintiff Doe had requested. These acts, which were at the directive of the prosecutor, cannot be held to be investigatory because, as previously found by the court, the district attorney's office did not investigate the alleged incident, it merely prosecuted suspect Doe.

Plaintiff seems to make much of the fact that the district attorney's office did not provide a procedure manual at the same time it directed defendant Chickering to "investigate" the Doe matter. The absence of a manual or specific guidelines as to how detective Chickering was to carry out the prosecutor's request, cannot be held to transform Chickering's activities into independent activity initiated by Chickering sufficient to destroy the absolute immunity defense.

██ Even if we were to examine Chickering's actions against the lesser standard of qualified immunity, the complaint must be dismissed. To subject Chickering to liability, it must be shown he knew or should have known his actions were in violation of plaintiff's rights, or he took the actions with malicious intent to cause a deprivation of plaintiff's rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Taylor v. Mayone*, 626 F.2d 247 (2d Cir.1980), *on remand*, 574 F.Supp. 609 (S.D.N.Y.1983), *aff'd*, 779 F.2d 39 (1985). The plaintiff avers fanciful and conclusory allegations of a conspiracy against him, as well as "malicious" use of the results of the voice stress test, but fails to proffer any admissible evidence. Nor are there any allegations in the amended complaint that Chickering used unlawful procedures during the course of his activities. *Compare Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (immunity lost where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable); *Walsh*, 849 F.2d at 69 (no qualified immunity where arrest for unpaid parking tickets was followed by unconstitutional strip search and body cavity inspection). Consequently, the complaint is dismissed as to defendant Chickering with respect to the § 1983 claim.

B. The Poughkeepsie Defendants.

██ 1. Detective Alfred Smith. Detective Smith is accorded qualified immunity from liability for discretionary functions

---

**4.** Despite the fact Doe requested the voice stress test, he now complains it is unreliable and the results are not to be considered. Part of plain-

tiff's malicious prosecution claim against Chickering is that the voice stress test results of failure were used against Doe for the prosecution.

insofar as his conduct does not violate clearly established statutory or constitutional rights when he knew or reasonably should have known of the constitutionally violative effect of his actions. *Walsh v. Franco*, 849 F.2d at 68 (2d Cir.1988) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982)).

Plaintiff Doe argues that detective Smith is not shielded by the qualified immunity defense because the varying or inconsistent descriptions given by the complaining witnesses leave "*no* question whatsoever that a reasonably well trained officer would have known there was no probable cause for arrest." Plntf's Memo. of Law at 18. Thus, only if a reasonably well-trained officer in detective Smith's position would have known there was no "indicia of probable cause" to support detective Smith's decision to seek a criminal summons, may liability be imposed. *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).[5] If probable cause is found, the question of malice is moot because "[u]nder the *Harlow* standard, ... an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Id.* at 341, 106 S.Ct. at 1096. Summary judgment on the issue of qualified immunity is permitted where, as here, the material facts are not in dispute. *Barbera v. Smith*, 654 F.Supp. 386, 398 (S.D.N.Y.1987), *rev'd on other grnds.*, 836 F.2d 96 (2d Cir.1987).

At the time detective Smith forwarded the misdemeanor complaint to the Town Justice for review and issuance of a criminal summons, he had interviewed the plaintiff, the complaining witnesses, and the alibi witnesses. One of the eyewitnesses had sworn out a misdemeanor complaint and it was supported by affidavits from the other eyewitness and the tennis court attendant who had known plaintiff for some time prior to the incident. Moreover, another possible suspect had been interviewed and, based on all the information obtained during the interview, including his physical characteristics, the police concluded he was not the perpetrator. Finally, prior to seeking the criminal summons, detective Smith requested that plaintiff Doe undergo a polygraph examination. Initially, Doe agreed but later, for reasons unknown to us, he refused.

■ Probable cause has been defined as a reasonable suspicion that the party is guilty of the offense. The suspicion must be as to the fact of guilt, not the possibility of obtaining a conviction. Further, it need not approach absolute certainty, nor is it inconsistent with a considerable element of doubt, but, it must be more than unfounded suspicion or mere conjecture. W. Prosser, Handbook of The Law of Torts § 119 (4th ed. 1971).

■ The court agrees that the evidence against plaintiff Doe contained an element of doubt. The description of the suspect was not entirely consistent, nor did it in all respects perfectly describe the plaintiff. However, we know of no requirement that probable cause requires unequivocal evidence as to the guilt of the suspect, a burden not even imposed at a criminal trial. The court finds that there were indicia of probable cause which would be recognized as such by a reasonably well trained officer and which were in support of detective Smith's decision to seek a criminal summons. *Curran v. Dural*, 512 F.Supp. 699 (E.D.Pa.1981) (where before trooper issued traffic citation against plaintiff he had statements of two neighbors which conflicted with that of plaintiff's father, there was probable cause to issue the citation and trooper could not be held liable on grounds of malicious prosecution); *Willis v. Cool*, 546 F.Supp. 458 (W.D.Mo.1982), *aff'd*, 714 F.2d 67 (8th Cir.1983) (no violation found under § 1983 where police officer supplied perjured testimony to prosecutor absent evidence police officer knew testimony was perjured). Plaintiff Doe has failed to defeat the defense of qualified immunity and, accordingly, the complaint is dismissed as

---

**5.** Doe was never arrested. Consequently, we interpret the objective standard required by *Malley* for an arrest warrant to be the applicable standard for the request for a criminal summons.

to detective Smith with respect to the § 1983 claim.

### 2. Town of Poughkeepsie.

■ Plaintiff Doe contends that the Town of Poughkeepsie may be held liable for the impermissible actions of detective Smith if the Town exercised improper training or inadequate controls over investigatory procedures and, consequently, persons are charged with crimes where probable cause is clearly lacking. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, there can be no municipal liability where no constitutional violations are found to have occurred. *Standridge v. City of Seaside*, 545 F.Supp. 1195, 1199 (N.D.Cal.1982). Because the court found no violation by defendant detective Smith, there are no grounds for establishing liability against the Town of Poughkeepsie and the complaint is dismissed as to it with respect to both the state malicious prosecution claim and the § 1983 claim.

### C. Vassar Defendants.

■ The Vassar defendants are concededly private parties and in order to cloak them with state action it must be shown they either jointly participated or conspired with a state actor to violate plaintiff's federal rights. *Adickes v. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (involvement of a state official in a conspiracy with a private party to violate plaintiff's federal rights provides the essential state action); *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966) (private persons jointly engaged with state officials in the prohibited action are acting under color of law for § 1983 purposes).

Upon an examination of detective Smith's actions pursuant to a standard of qualified immunity, this court found no actions violative of plaintiff's federal rights. Consequently, there was no liability to impose on the Town of Poughkeepsie. Thus, in order to succeed on his § 1983 claim against the Vassar defendants, the plaintiff must demonstrate joint action or a conspiracy with the Dutchess County District Attorney defendants, specifically, detective Chickering, assistant district attorney Marjorie Smith, or District Attorney Grady, all of whom were accorded an absolute immunity defense. *Dennis v. Sparks*, 449 U.S. 24, 27–28, 101 S.Ct. 183, 186–187, 66 L.Ed.2d 185 (1980) (§ 1983 liability may be imposed on a private party for conspiracy with a defendant who enjoys absolute immunity).

■ Conclusory allegations or naked assertions are insufficient to plead joint or conspiratorial action between a state actor and a private defendant. *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir.1984). Supporting operative facts must be alleged, the pleadings must specifically present facts tending to show agreement and concerted action. *Sooner Products Co. v. McBride*, 708 F.2d 510, 512 (10th Cir.1983). "The standard [for pleading a § 1983 conspiracy] is even stricter where the state officials allegedly involved in the conspiracy are immune from suit...." *Id.* (citing *Shaffer v. Cook*, 634 F.2d 1259, 1260 (10th Cir.1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981)).

■ Initially, we find the complaint fails to allege a conspiracy or joint action between the Vassar and Dutchess defendants with sufficient specificity to survive a motion to dismiss, Fed.R.Civ.P. 12(b)(6). Plaintiff avers that despite his protestations of and the evidence he offered in support of his innocence, he was accused and prosecuted at the malicious direction of the defendants, acting separately and in concert, Amended Cmplnt. ¶¶ 56, 58; the defendants acted either under color of state law or in active concert with defendants who were so acting, *id.* at ¶ 18; that Joan Sherman of the Vassar College Personnel Department directed defendants Benson and Cummings to find and charge a man who committed the alleged lewd offense, *id.* at ¶ 33.

We do not know when the "Vassar defendants" said what, nor to whom, in fur-

therance of a conspiracy,[6] nor when they jointly acted with the Dutchess defendants so as to bring them within the requisite requirement of state action. Plaintiff's basic contention appears to be that there must have been a conspiracy or joint action because he was charged and prosecuted despite his protestations of innocence, the inconsistent descriptions of the perpetrator, and the existence of another suspect whom the police concluded was not the suspect, all of which he seems to believe prove his innocence beyond any doubt. But, these naked assertions, devoid of any specific factual content or support, are insufficient to make out a § 1983 claim as to the Vassar defendants. *Phillips,* 746 F.2d at 782; *Sooner Products Co.,* 708 F.2d at 510; *see also Pettman v. United States Chess Federation,* 675 F.Supp. 175 (S.D.N.Y.1987) (mere conclusory allegations do not provide adequate basis for a civil rights claim, which requires facts presented in support of the allegation).

In his affidavit in opposition to defendants' motion for summary judgment, plaintiff merely restates the conclusory allegations asserted in the amended complaint, although he does include some additional unsupported allegations. For example, "defendants Vassar, Benson and Cummings then pressed the Dutchess County District Attorney to prosecute me," Amended Cmplnt., ¶ 32, and then worked side by side with the investigator for the District Attorney, and Marjorie Smith and Grady up to and during the trial.

There is no evidence submitted or even alluded to that connects the Vassar defendants with Grady, nor with assistant district attorney Smith beyond her interview of Cummings and Benson in preparation for trial in February 1984, a year and a half after the criminal summons was issued, and during the subsequent trial. M. Smith Aff'd, ¶ 6. The initial contact between the Vassar defendants and detective Chickering was on November 7, 1983, when he interviewed them, three months after the criminal summons was issued by the Town Justice. Chickering Aff'd. Further, assistant district attorney Forman initiated the contact with the complaining witnesses. They did not seek out anyone from the District Attorney's Office, but confined their initial involvement in the Doe matter to contact with the Town of Poughkeepsie Police, specifically detective Smith, whom we found to have acted with probable cause.

If plaintiff has admissible evidence of joint action or a conspiracy, he cannot save it for trial. It must be offered in support of his opposition to a motion for summary judgment. *Howard v. Holmes,* 656 F.Supp. 1144 (S.D.N.Y.1987). Discovery has been completed but the plaintiff did not proffer even a scintilla of admissible evidence which raises a genuine issue of material facts. Accordingly, defendants' motion for summary judgment is granted with respect to the § 1983 claim and the complaint as to this claim is dismissed as to Vassar College, Ruth Cummings and Susan Benson.

We decline to retain pendent jurisdiction over the sole remaining claim, a state law claim of abuse of process, and that claim is dismissed as to all defendants. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

█ Defendants' motion for Rule 11 sanctions and for fees pursuant to 42 U.S.C. § 1988 is denied since plaintiff may have a colorable state claim against some of the Vassar defendants.

Consistent with this decision, plaintiff's motion is denied in all respects.

SO ORDERED.

---

**6.** We know, of course, of the criminal reports and complaints filed by the Vassar defendants, but they do not evidence a conspiracy to maliciously prosecute. We have no information concerning an instance in which a Vassar defendant stated, or even implied, that they wanted Doe prosecuted even though he was innocent.